# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

MARGARET LITTMAN, et al.,

    *Plaintiffs*,

    v.

UNITED STATES DEPARTMENT OF
    LABOR, et al.,

    *Defendants.*

No. 3:24-cv-194

Chief Judge Waverly D. Crenshaw, Jr.

Magistrate Judge Barbara D. Holmes

---

## DEFENDANTS' CONSOLIDATED BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Director

JOHN T. LEWIS (D.C. Bar No. 1033826)
(admitted *pro hac vice*)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 353-0533
Fax: (202) 616-8460
E-mail: john.t.lewis.iii@usdoj.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

Table of Authorities...........................................................................................................ii

Introduction........................................................................................................................1

Background.........................................................................................................................3

I.      The Fair Labor Standards Act............................................................................3

II.     The Department's Prior Guidance.......................................................................5

III.    The 2024 Rule.....................................................................................................6

IV.    This Lawsuit........................................................................................................7

Legal Standard ...................................................................................................................8

Argument............................................................................................................................9

I.      The Court should dismiss this case for lack of subject-matter jurisdiction.......9

II.     In the alternative, the Court should enter judgment for the Department........12

         A.     The 2024 Rule is not arbitrary and capricious....................................12

         B.     The 2024 Rule does not exceed the Department's authority under the Fair Labor Standards Act....................................................................16

                1.    The 2024 Rule is consistent with the FLSA..........................16

                2.    The 2024 Rule is an interpretive rule...................................18

III.    Plaintiffs are not entitled to the extraordinary relief of a preliminary injunction............22

         A.     Plaintiffs have failed to show irreparable injury................................22

          B.     The equities and the public interest weigh against a preliminary injunction. ......24

Conclusion........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Off Duty Police Servs., Inc.*,
   915 F.3d 1050 (6th Cir. 2019) ...................................................................... *passim*

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*,
   511 F. App'x 398 (6th Cir. 2013) ............................................................... 24

*Am. Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001) ................................................................. 9

*Bartels v. Birmingham*,
   332 U.S. 126 (1947) .................................................................................. 3

*Benisek v. Lamone*,
   138 S. Ct. 1942 (2018) .............................................................................. 24

*Brock v. Superior Care, Inc.*,
   840 F.2d 1054 (2d Cir. 1988) .................................................................... 15

*Celebrezze v. Nuclear Reg. Comm'n*,
   812 F.2d 288 (6th Cir. 1987) ..................................................................... 23

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) .................................................................................. 18

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................. 9, 10

*Coalition for Workforce Innovation v. Walsh*,
   2022 WL 1073346 (E.D. Tex. Mar. 14, 2022) ......................................... 6, 21

*Cornish v. Dudas*,
   540 F. Supp. 2d 61 (D.D.C. 2008) ............................................................ 25

*CoverDyn v. Moniz*,
   68 F. Supp. 3d 34 (D.D.C. 2014) .............................................................. 24

*D.T. v. Sumner Cnty. Schs.*,
   942 F.3d 324 (6th Cir. 2019) ..................................................................... 8

*Daunt v. Benson*,
   956 F.3d 396 (6th Cir. 2020) ..................................................................... 24

*Davis v. Pension Benefit Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ................................................................. 24

*Encino Motorcars v. Navarro*,
    138 S. Ct. 1134, 1142 (2018)........................................................................17

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)......................................................................................12

*FCC v. Prometheus Radio Project*,
    141 S. Ct. 1150 (2021)...........................................................................12, 14

*First Nat'l Bank of Lexington v. Sanders*,
    946 F.2d 1185 (6th Cir. 1991) (per curiam)...............................................18

*Fowler v. Benson*,
    924 F.3d 247 (6th Cir. 2019)........................................................................8

*Garlock, Inc. v. United Seal, Inc.*,
    404 F.2d 256 (6th Cir. 1968) (per curiam).................................................22

*Harris v. Diamond Dolls of Nevada, LLC*,
    2022 WL 4125474 (D. Nev. July 26, 2022)..........................................20, 21

*Health Ins. Ass'n of Am., Inc. v. Shalala*,
    23 F.3d 412 (D.C. Cir. 1994).......................................................................22

*Hoctor v. U.S. Dep't of Agric.*,
    82 F.3d 165 (7th Cir. 1996).............................................................19, 20, 21

*John Doe Co. v. CFPB*,
    849 F.3d 1129 (D.C. Cir. 2017)...................................................................23

*Keller v. Miri Microsys. LLC*,
    781 F.3d 799 (6th Cir. 2015)...................................................................5, 16

*Little Sisters of the Poor v. Pennsylvania*,
    140 S. Ct. 2367 (2020)...........................................................................12, 13

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983)........................................................................................22

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994)......................................................................................25

*Marshall Cnty. Health Care Auth. v. Shalala*,
    988 F.2d 1221 (D.C. Cir. 1993).....................................................................9

*McFeeley v. Jackson Street Entertainment, LLC*,
    825 F.3d 235 (4th Cir. 2016).......................................................................14

*Metro Hydroelec. Co. v. Metro Parks*,
    541 F.3d 605 (6th Cir. 2008) ................................................................. 8

*Metro. Sch. Dist. of Wayne Twp. v. Davila*,
    969 F.2d 485 (7th Cir. 1992) ................................................................. 18

*Morrison v. Int'l Programs Consortium, Inc.*,
    253 F.3d 5 (D.C. Cir. 2001) ................................................................... 15

*N. Air Cargo v. U.S. Postal Serv.*,
    756 F. Supp. 2d 116 (D.D.C. 2010) ...................................................... 24

*Nationwide Mut. Ins. Co. v. Darden*,
    503 U.S. 318 (1992) ............................................................................... 16

*New York v. Dep't of Homeland Security*,
    969 F.3d 42 (2d Cir. 2020) .................................................................... 23

*NLRB v. Hearst Publ'ns, Inc.*,
    322 U.S. 111 (1944) ................................................................................. 3

*Nw. Hosp., Inc. v. Hosp. Serv. Corp.*,
    687 F.2d 985 (7th Cir. 1982) ................................................................. 20

*Ohio v. Becerra*,
    87 F.4th 759 (6th Cir. 2023) ................................................................. 12

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ..................................................................... 18, 20, 21

*R.K. v. Lee*,
    53 F.4th 995 (6th Cir. 2022) ................................................................... 9

*Rutherford Food Corp. v. McComb*,
    331 U.S. 722 (1947) ...................................................................... *passim*

*Salmi v. Sec'y of HHS*,
    774 F.2d 685 (6th Cir. 1985) ................................................................. 16

*Shalala v. Guernsey Memorial Hosp.*,
    514 U.S. 87 (1995) ................................................................................. 18

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) (en banc) ............................................ 23

*Slidewaters LLC v. Wash. St. Dep't of Lab. & Indus.*,
    4 F.4th 747 (9th Cir. 2021) ..................................................................... 8

Case 3:24-cv-00194    Document 12    Filed 03/15/24    Page 5 of 34 PageID #: 69

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) .......................................................................... 9

*Texas v. EPA,*
    829 F.3d 405 (5th Cir. 2016) ........................................................... 24

*Tiger Lily LLC v. HUD,*
    499 F. Supp. 3d 538 (W.D. Tenn. 2020) ......................................... 23

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ........................................................................ 10

*U.S. v. Rosenwasser,*
    323 U.S. 360 (1945) ........................................................................ 16

*U.S. v. Silk,*
    331 U.S. 704 (1947) ................................................................. *passim*

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981) .......................................................................... 8

*Usery v. Pilgrim Equip. Co.,*
    527 F.2d 1308 (5th Cir. 1976) ......................................................... 14

*Vanguard Interstate Tours, Inc. v. ICC,*
    735 F.2d 591 (D.C. Cir. 1984) ........................................................ 18

*Vita-Mix Corp. v. Tristar Prods., Inc.,*
    2008 WL 11383504 (N.D. Ohio 2008) ........................................... 24

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
    435 U.S. 519 (1978) ........................................................................ 21

*Waskul v. Washtenaw Cnty.,*
    900 F.3d 250 (6th Cir. 2018) ............................................................ 9

*Winter v. NRDC,*
    555 U.S. 7 (2008) ........................................................................... 22

**Statutes, Rules, and Regulations**

29 U.S.C.
    § 202 ....................................................................................... 1, 3
    § 203 ..................................................................................... 3, 16
    § 206 ............................................................................................ 3
    § 207 ............................................................................................ 3
    § 211 ............................................................................................ 3

29 C.F.R.

§ 500.20 ......................................................................................................... 5
§ 775.1 ......................................................................................................... 19
§ 780.330 ......................................................................................................... 5
§ 788.16 ......................................................................................................... 5
§ 795.100 ......................................................................................................... 7, 19
§ 795.110 ......................................................................................................... *passim*

86 Fed. Reg.

1168 ......................................................................................................... *passim*
12535 ......................................................................................................... 6
24303 ......................................................................................................... 6

87 Fed. Reg. 62218 ......................................................................................................... 6

89 Fed. Reg. 1638-01 ......................................................................................................... *passim*

Fed. R. Civ. P.

56(b). ......................................................................................................... 8
65(a)(2) ......................................................................................................... 8

## Other Authorities

*2024 FLSA Worker Classification Rule—Information for Potential Freelancers*,
Wage & Hour Div., U.S. Dep't of Labor, https://perma.cc/9T66-JQYA
(last visited March 14, 2024) ......................................................................................................... 10

# INTRODUCTION

The Fair Labor Standards Act, 29 U.S.C. §§ 201-19 ("FLSA" or "Act"), was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. Consistent with the FLSA's stated purpose, its "strikingly broad" definition of "employee" protects any worker who, in light of the totality of the circumstances, is economically dependent on their employer. *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055, 1059 (6th Cir. 2019). On January 10, 2024, the Department of Labor promulgated interpretive guidance—rooted in the FLSA's text, decades of Supreme Court and federal circuit precedent (including in the Sixth Circuit), and the Department's own previous subregulatory efforts—for determining whether a worker is an employee or an independent contractor. *See Employee or Independent Contractor Classification Under the Fair Labor Standards Act*, 89 Fed. Reg. 1638-01 (codified at 29 C.F.R. Part 795) (the "2024 Rule"). The 2024 Rule also rescinded the interpretive guidance that the Department published in January 2021, *Independent Contractor Status Under the Fair Labor Standards Act*, 86 Fed. Reg. 1168 (the "2021 Rule"). *See* 89 Fed. Reg. at 1639.

Plaintiffs, two freelance writers, now seek the extraordinary relief of a preliminary injunction that would invalidate the 2024 Rule and thereby sweep away an analysis that has, since the 1940s, generally guided the Department in the exercise of its enforcement authority under the FLSA as well as the broader public. *See* Mem. in Supp. of Mot. for Prelim. Inj., ECF No. 7-1 ("Mot."). But Plaintiffs, who allege that they have worked as freelancers for decades, cannot plausibly assert that the Department's restatement of these decades-old principles will harm them. This case should therefore be dismissed for lack of subject-matter jurisdiction.

Even if the Court had jurisdiction, Plaintiffs' request would not make it past what they concede is the "most important" factor: likelihood of success on the merits. *Id.* at 7. Because the

1

2024 Rule is fully consistent with the FLSA and the Administrative Procedure Act, the Court should instead advance the trial on the merits and enter judgment for the Department.

The 2024 Rule is not arbitrary and capricious. As the Department reasonably concluded, the 2024 Rule is consistent with the FLSA's text as interpreted by courts, less likely to cause confusion than the 2021 Rule due to its consistency with judicial precedent, and, if applied by employers and courts, likely to help prevent the misclassification of workers as independent contractors, which could result in the denial of FLSA protections. Plaintiffs' argument hinges on minor quibbles with the 2024 Rule, such as that it uses six factors rather than five or organizes the factors slightly differently than some courts. These objections fall far short of what is required to show that an agency's action is so unreasoned as to be unlawful.

The 2024 Rule also falls well within the Department's authority under the FLSA. The Rule's analysis of the distinction between employees and independent contractors faithfully applies the FLSA's broad definitions and is consistent with decades of precedent, including in the Sixth Circuit. The Department also had inherent authority to issue the 2024 Rule as an interpretive rule, given that it emphasizes that it does nothing more than provide guidance about how the agency interprets the FLSA. The Court should therefore uphold the Rule.

Even if Plaintiffs were likely to prevail on the merits, they cannot establish the other preliminary-injunction factors. Their speculative allegations about how the 2024 Rule might affect their freelancing do not add up to irreparable injury. On the other side of the ledger, an injunction would disrupt the Department's efforts to provide guidance on how to discern whether a worker is an employee, increasing the risk that vulnerable workers will be misclassified.

For these reasons, the Court should deny Plaintiffs' motion for a preliminary injunction and dismiss this case or, in the alternative, enter judgment for the Department.

2

# BACKGROUND

## I.  The Fair Labor Standards Act

Congress enacted the FLSA in 1938 to eliminate "low wages and long hours" and "free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947); *see also* 29 U.S.C. § 202; 89 Fed. Reg. at 1638. To that end, the FLSA requires covered employers to pay nonexempt employees at least the federal minimum wage and, for hours worked over 40 hours in a workweek, 1.5 times the employee's regular rate, 29 U.S.C. §§ 206(a), 207(a), and to keep certain records regarding employees, *id.* § 211(c).

The Act generally defines employees as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and employers to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d). To "employ" is defined to include "to suffer or permit to work." *Id.* § 203(g). The FLSA does not define independent contractors, who are outside the broad scope of workers covered as employees by the Act. *Rutherford*, 331 U.S. at 729; 89 Fed. Reg. at 1638.

Since the 1940s, courts have applied an "economic reality" test, grounded in the FLSA's broad understanding of employment, to determine whether a worker is an employee or an independent contractor under the Act. 89 Fed. Reg. at 1638, 1641-42 (citing *Rutherford*, 331 U.S. 722; *U.S. v. Silk*, 331 U.S. 704 (1947); *Bartels v. Birmingham*, 332 U.S. 126 (1947); *NLRB v. Hearst Publ'ns, Inc.*, 322 U.S. 111 (1944)). The ultimate inquiry is whether, as a matter of economic reality, the worker is economically dependent on the employer for work (and is thus an employee) or is in business for themself (and is thus an independent contractor), rather than simply whether the employer would be considered to have control over the worker under the narrower standards of the common law. *Id.* at 1638, 1641. In assessing economic dependence,

3

courts have historically conducted a totality-of-the-circumstances analysis, considering multiple factors with no one factor or factors having predetermined weight. *Id.* at 1638, 1641-44.

Specifically, in *Silk*, the Supreme Court identified five factors as "important" for distinguishing between employees and independent contractors: "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation[,] and skill required in the claimed independent operation." *Id.* at 1641 (quoting *Silk*, 331 U.S. at 716). The Court added that "[n]o one [factor] is controlling nor is the list complete." *Id.* (quoting *Silk*, 331 U.S. at 716). On the same day that the Supreme Court decided *Silk*, it also decided *Rutherford*, in which it affirmed a decision that analyzed an FLSA employment relationship based on economic realities. *Id.* (citing *Rutherford*, 331 U.S. at 727). In *Rutherford*, the Court considered several of the *Silk* factors and noted that the workers in question were best characterized as "part of the integrated unit of production under such circumstances that the workers performing the task were employees." *Id.* (quoting *Rutherford*, 331 U.S. at 729-30). Just one week later, the Court decided *Bartels*, again considering several *Silk* factors and reiterating that courts must consider whether, in light of the "total situation," workers are, as a "matter of economic reality[,] … dependent upon the business to which they render service." *Id.* (quoting *Bartels*, 332 U.S. at 130).

Consistent with *Silk*, *Rutherford*, and their progeny, all of the federal courts of appeals apply the totality-of-the-circumstances economic reality analysis, using the factors articulated in *Silk* while acknowledging that they are not exhaustive and should not be applied mechanically or given arbitrary weights. *Id.* at 1642 nn.52-53 (listing cases). The Sixth Circuit, for example, considers six non-exclusive factors: "1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending

4

upon his skill; ... 5) the degree of the alleged employer's right to control the manner in which the work is performed ...;" and 6) "whether the service rendered is an integral part of the alleged employer's business." *Off Duty*, 915 F.3d at 1055 (quoting *Keller v. Miri Microsys. LLC*, 781 F.3d 799, 807 (6th Cir. 2015)). "None of these factors is determinative on its own, and each must be considered 'with an eye toward the ultimate question—[the worker's] economic dependence on or independence from' the alleged employer." *Id.* (quoting *Keller*, 781 F.3d at 807).

## II. The Department's Prior Guidance

In 1949, the Department first issued an opinion letter "distilling six 'primary factors which the Court considered significant' in *Rutherford* and *Silk*," emphasizing that "no single factor is controlling" in determining whether an employment relationship exists under the FLSA. 89 Fed. Reg. at 1643. In the decades since, the Department has generally applied a similar multifactor economic reality analysis, deferring to legal precedent and the guiding principles announced therein not to apply factors mechanically or assign any factor a predetermined weight. *See id.* at 1642-44. The Department has also issued regulations providing similar guidance for specific industries. *See id.* at 1643 (citing 29 C.F.R. §§ 500.20(h)(4), 780.330(a)-(b), 788.16(a)).

On January 7, 2021, the Department published the 2021 Rule with an effective date of March 8, 2021. *See* 89 Fed. Reg. at 1639; 86 Fed. Reg. at 1168. The 2021 Rule added a new part to Title 29 of the Code of Federal Regulations (Part 795), introducing a new generally applicable analysis for determining whether a worker is an employee or an independent contractor—one that neither the Department nor any court had ever applied. *Id.* at 1638-39, 1727. Although the rule reiterated the longstanding principle that a worker is an employee if, as a matter of economic reality, the worker is economically dependent on the employer for work, *id.* at 1644, the rule made significant changes to how the analysis is applied, *id.* at 1638-45.

5

Specifically, the 2021 Rule created a novel five-factor analysis for determining whether a worker is economically dependent on an employer. In contrast to prior guidance and contrary to case law, the 2021 Rule designated two of the five factors as "core factors" that should carry greater weight in the analysis—meaning that, if they both indicate the same classification, there is a "substantial likelihood" that the classification is the correct classification. *Id.* at 1638. The two core factors were (1) the nature and degree of control over the work and (2) the worker's opportunity for profit or loss (which included the worker's initiative and investments). *Id.* at 1644. The three remaining factors were (3) the amount of skill required for the work, (4) the degree of permanence of the working relationship, and (5) whether the work is part of an integrated unit of production. *Id.* at 1645; 86 Fed. Reg. 1171. Under the 2021 Rule, factors (3) through (5) were "less probative and, in some cases, may not be probative at all" of economic dependence and were "highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." 89 Fed. Reg. at 1645.

After the change in Administration in 2021, the Department first delayed and then withdrew the 2021 Rule. *See* 86 Fed. Reg. 12535 (Mar. 4, 2021) (the Delay Rule); 86 Fed. Reg. 24303 (May 6, 2021) (the Withdrawal Rule). Both the Delay Rule and the Withdrawal Rule were challenged in *Coalition for Workforce Innovation v. Walsh*, in which a district court held that they violated certain provisions of the Administrative Procedure Act and vacated both. *See* 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022) ("*CWI*"). On May 13, 2022, the Department of Labor appealed the decision in *CWI*. That decision was vacated as moot after the Department promulgated the 2024 Rule. *See* Order, *CWI*, No. 22-40316 (5th Cir. Feb. 19, 2024), Dkt. No. 82.

## III.     The 2024 Rule

On October 13, 2022, the Department published a new proposed rule. *Employee or Independent Contractor Classification Under the Fair Labor Standards Act*, 87 Fed. Reg. 62218.

After receiving and considering over 55,000 comments, the Department promulgated the 2024 Rule on January 10, 2024, and it became effective on March 11, 2024. 89 Fed. Reg. 1638-01.

The 2024 Rule both rescinds the 2021 Rule and separately replaces it with "an analysis that is more consistent with judicial precedent and the Act's text and purpose." *Id.* at 1638; *see* 29 C.F.R. Part 795. Specifically, the 2024 Rule embodies a totality-of-the-circumstances economic reality analysis in which the six longstanding factors do not have predetermined weight. 89 Fed. Reg. at 1645. Those factors include: (1) the worker's opportunity for profit or loss depending on managerial skill; (2) investments by the worker and the potential employer; (3) degree of permanence of the work relationship; (4) nature and degree of control; (5) extent to which the work performed is an integral part of the potential employer's business; and (6) worker's skill and initiative. 29 C.F.R. §§ 795.110(b)(1)-(6).

The preamble to the 2024 Rule also provides a detailed analysis about the application of each factor to serve as a guide for determining whether a worker is an employee. *See* 89 Fed. Reg. at 1671-1725. However, the 2024 Rule expressly emphasizes that it consists solely of "general interpretations," and is "intended to serve as a 'practical guide to employers and employees' as to how the Department will seek to apply the Act." 29 C.F.R. § 795.100.

## IV.    This Lawsuit

Plaintiffs Margaret Littman and Jennifer Chesak filed their Verified Complaint ("Compl.") on February 21, 2024. *See* ECF No. 1. Plaintiffs advance three claims: (1) the 2024 Rule is arbitrary and capricious, Compl. ¶¶ 48-53; (2) the 2024 Rule exceeds the Department's statutory authority, *id.* ¶¶ 54-57; and (3) the 2024 Rule violates the non-delegation doctrine, *id.* ¶¶ 58-63. Plaintiffs allege that the 2024 Rule will interfere with their freelance writing, *see id.* ¶¶ 41, 46. On March 1, 2024, Plaintiffs moved for a preliminary injunction. *See* ECF No. 7-1.

7

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the court lacks subject-matter jurisdiction. "[I]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Metro Hydroelec. Co. v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008) (quotation omitted).

Even where jurisdiction is present, a preliminary injunction is an "extraordinary and drastic remedy" that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019) (quotation omitted). Courts consider: "(1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019).

"Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing," Fed. R. Civ. P. 65(a)(2), so long as the court gives "clear and unambiguous notice" of its intent to consolidate. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Consolidation is appropriate where the "issues raised by the complaint [are] legal" and "d[o] not require additional factual development." *Slidewaters LLC v. Wash. St. Dep't of Lab. & Indus.*, 4 F.4th 747, 760 (9th Cir. 2021).

Whether in response to a motion for a preliminary injunction or otherwise, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). "The court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* 56(a). Summary judgment is often the appropriate method of resolving cases under the APA because the preliminary injunction procedure "assumes that the district court will be obliged to make a decision before the complete case is presented—before all the evidence is submitted."

8

*Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). However, "when reviewing agency action[,] the question of whether the agency acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record." *Id.* Put differently, "[t]he entire case on review is a question of law, and only a question of law." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

## ARGUMENT

**I.** **The Court should dismiss this case for lack of subject-matter jurisdiction.**

"Article III of the Constitution limits federal courts' jurisdiction" to the adjudication of "'Cases' and 'Controversies,'" and thereby requires plaintiffs to "establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quotation omitted). "[W]here a plaintiff moves for a preliminary injunction, the district court … should normally evaluate standing under the heightened standard for evaluating a motion for summary judgment," and must assess whether they have shown a "substantial likelihood of standing." *Waskul v. Washtenaw Cnty.*, 900 F.3d 250, 255 n.3 (6th Cir. 2018) (quotations omitted). Specifically, Plaintiffs must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Importantly, "[a] concrete injury … must be more than speculative," *R.K. v. Lee*, 53 F.4th 995, 999 (6th Cir. 2022); "[a]llegations of possible future injury are not sufficient," *Clapper*, 568 U.S. at 409.

Plaintiffs' conclusory allegations do not meet these requirements, particularly given that the 2024 Rule simply incorporates standards that federal courts have applied for decades. Plaintiffs' standing theory is founded upon mere speculation that the 2024 Rule "increases the risk that companies with which [they] work[] will face liability" for classifying them as independent contractors, and that those companies will therefore "misclassify" them as

9

employees rather than independent contractors or "cease to work" with them. Compl. ¶¶ 41, 46. A plaintiff alleging a "risk of future harm" cannot simply assert that the risk has increased by some undefined amount, but must instead show that the risk "is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). Similarly, Plaintiffs' allegations that the 2024 Rule "chill[s]" their "business practices" in some undefined way, Compl. ¶¶ 42, 47, "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Clapper*, 568 U.S. at 418 (quotation omitted).

Plaintiffs' fears of being classified as employees are particularly unreasonable in light of the terms of the 2024 Rule. As the Department explained, the Rule, which describes how the Department will construe the FLSA in its enforcement efforts, "is not intended to disrupt the businesses of independent contractors who are, as a matter of economic reality, in business for themselves." 89 Fed. Reg. at 1,638. The Rule instead "provides a consistent approach for those businesses that engage (or wish to engage) independent contractors as well as for those who wish to work as independent contractors." *Id.* at 1,640. Thus, the Department "does not anticipate that independent contractors … who are correctly classified as independent contractors under current circuit law would be reclassified." *Id.* at 1,659; *see also id.* at 1,658-59 (supportive comments). The Department has also issued subregulatory guidance, drawing on the 2024 Rule, that explains that writers in positions similar to Plaintiffs' may often qualify as independent contractors. *See 2024 FLSA Worker Classification Rule—Information for Potential Freelancers*, Wage & Hour Div., U.S. Dep't of Labor, https://perma.cc/9T66-JQYA (last visited March 14, 2024).

Indeed, Plaintiffs allege that they spent *decades* working as independent contractors prior to the promulgation of the 2021 Rule. Compl. ¶¶ 38-40, 43-44. But the 2024 Rule simply adopts "guidance derived from the same analysis that courts have applied for decades," 89 Fed. Reg. at

10

1,658, under which Plaintiffs apparently worked without incident. If Plaintiffs were able to work as properly classified independent contractors *before* the 2021 Rule, then the 2024 Rule should not change those circumstances. Nor do Plaintiffs allege that their companies changed their practices in ways favorable to them *after* the 2021 Rule was promulgated. For similar reasons, an order setting aside the interpretive regulations in the 2024 Rule would not redress Plaintiffs' purported injuries. The 2024 Rule independently rescinds the 2021 Rule, and that rescission "remain[s] operative even if th[e] final rule's regulations replacing the 2021 IC Rule are invalidated," because the Department concluded that the 2021 Rule deviated from longstanding precedent and created confusion. *Id.* at 1724-25. In the absence of the 2021 Rule, the Department reasoned that "case law and the Department's subregulatory guidance"—the substance of which is materially identical to the 2024 Rule—would apply. *Id.* at 1,725.

Plaintiffs' additional allegations concerning Ms. Chesak fare no better. Unlike Ms. Littman, Ms. Chesak asserts that she "works with companies that, to comply with the 2024 Rule, have taken measures that harm Ms. Chesak." Compl. ¶ 45. But Plaintiffs do not support this conclusory statement with any plausible allegations that these companies have done so *as a result of the 2024 Rule*, rather than as part of changes to the companies' overall business practices or in response to general concerns about misclassification. Indeed, Plaintiffs allege that Ms. Chesak's companies have already made these changes, even though the 2024 Rule was not even in effect when Plaintiffs filed their Complaint. Plaintiffs also provide no reason to think that these companies would revert these changes if the 2024 Rule were set aside, given that the 2024 Rule simply provides interpretations consistent with judicial precedent. Because Plaintiffs cannot show that their freelancing activities are or will be affected in any significant way by the 2024 Rule, this case should be dismissed for lack of subject-matter jurisdiction.

11

## II. In the alternative, the Court should enter judgment for the Department.

To the extent the Court concludes that it has jurisdiction, the Court should enter judgment for the Department. The issues in this case are entirely legal, and the Department has filed the certified list of the contents of the administrative record (all of which are publicly available) with the Court, meaning that this case is amenable to resolution on summary judgment.

The Department did not act arbitrarily in promulgating the 2024 Rule, which carefully synthesizes precedent to generate a familiar and readily applicable interpretation to guide how the Department would analyze a worker's classification as an employee or an independent contractor. The 2024 Rule is also a reasoned, and indeed, correct interpretation of the FLSA's expansive definition of "employ"—one that falls well within the Department's inherent authority to interpret the FLSA. For the same reasons, the Court should deny Plaintiffs' motion for a preliminary injunction, as Plaintiffs have not shown that they are likely to prevail on the merits.

### A. The 2024 Rule is not arbitrary and capricious.

To pass muster under arbitrary-and-capricious review, the agency need only "articulate a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made." *Little Sisters of the Poor v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020). Under this "deferential" standard, a court "simply ensures that the agency has acted within a zone of reasonableness," and "may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). Moreover, when an agency changes a policy, it need not demonstrate "that the reasons for the new policy are better than the reasons for the old one," but only that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see Ohio v. Becerra*, 87 F.4th 759, 772 (6th Cir. 2023) (courts "do not apply greater scrutiny to agency action that changes a prior policy").

12

The Department provided an exhaustive account of its reasons for rescinding the 2021 Rule and replacing it with the 2024 Rule's interpretive regulations. As the agency explained, the 2024 Rule is consistent "with the FLSA's text … as well as decades of case law," 89 Fed. Reg. at 1649, and thereby less likely than the 2021 Rule to cause "confusion and uncertainty," *id.* at 1653, or to lead to "the misclassification of employees as independent contractors," which could "result in the denial of FLSA protections," *id.* at 1656. The Department also determined that, in the event the 2024 Rule's interpretive regulations were set aside, it would still intend to rescind the 2021 Rule for the same reasons. *Id.* at 1724-25. In that event, "case law and the Department's subregulatory guidance … would provide a familiar and longstanding standard for businesses and workers." *Id.* at 1725. The agency therefore provided a "satisfactory explanation" for its decisions, and those decisions should be upheld. *Little Sisters of the Poor*, 140 S. Ct. at 2383.

Plaintiffs' arbitrary-and-capricious argument is predicated largely on their assertion that the 2024 Rule "reduce[s] clarity and certainty." Mot. at 8. But the 2024 Rule supplies a comprehensive interpretation, based on case law and the Department's enforcement expertise, for determining whether a worker is an employee. 89 Fed. Reg. at 1669. It does so in easily accessible interpretive regulatory text that can be applied to workers in any industry and that is clearer and more robust than the Department's earlier subregulatory guidance. *Id.* at 1659-60. To be sure, the Department did not provide mechanistic instructions for analyzing the factors, because to do so would be directly contrary to case law and would limit the test's intended flexibility. *Id.* at 1669-70. Rather, the factors are tools that help determine whether a worker is economically dependent on their employer for work or is in business for themself. *Id.* at 1670.

Plaintiffs cannot show that the 2024 Rule is more likely to cause confusion than the 2021 Rule—let alone that the agency's contrary conclusion was *unreasonable*, as they must to prevail

13

on this claim. *See Prometheus Radio Project*, 141 S. Ct. at 1158 (emphasizing that the standard is "deferential" and ensures that the agency acted within a "zone of reasonableness"). Plaintiffs' supposition is belied by the fact that the 2024 Rule sets forth, in detailed interpretive regulations, the multifactor economic reality test that the Supreme Court and other courts have applied for decades, while the 2021 Rule deviated from that settled approach with a novel alternative. *Id.* at 1649-53. Indeed, the Sixth Circuit itself applies a six-factor test that is substantively identical to the test enumerated in the 2024 Rule. *Compare Off Duty*, 915 F.3d at 1054-55 *with* 29 C.F.R. § 795.110(b). That alone should resolve this case in the Department's favor.

Similarly, Plaintiffs' insistence that multifactor tests—which are common in many areas of the law—are always inappropriate is off-base. Mot. at 8. While such a test may not always provide "definitive guidance to those affected, it allows for flexible application to the myriad different working relationships that exist in the national economy." *McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 241 (4th Cir. 2016), *cited in* 89 Fed. Reg. at 1,642 n.52; *see also* 89 Fed. Reg. at 1642 n.51 (citing *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976) ("[T]he lesson taught by the Supreme Court's 1947 trilogy is that any formalistic or simplistic approach to who receives the protection of this type of legislation must be rejected.")). The Department reasonably determined that the nuanced analysis that accompanies each factor in the 2024 Rule provides clearer guidance than rote instructions for weighing. *Id.* at 1670.

Nor can Plaintiffs seriously claim that the 2021 Rule provided greater clarity. In describing the 2021 Rule as a "two-factor test," Mot. at 1; Compl. ¶ 3, Plaintiffs fall prey to the very confusion the Department sought to dispel in promulgating the 2024 Rule. The 2021 Rule in fact identified *five* factors for consideration, also treated "no one factor [as] dispositive", and similarly allowed decisionmakers to consider other, "additional" factors. *Id.* at 1644. To apply

14

the 2021 Rule, courts would have needed to discern what its new interpretation meant (including how it weighed and narrowed certain factors) and then to decide whether to apply it or their own standards from precedent (or some combination). *Id.* at 1654. These questions could have taken years of litigation in different circuit to sort out, and businesses operating nationwide would have faced the prospect of familiarizing themselves with multiple standards for determining who is an employee under the FLSA, resulting in more confusion and uncertainty. *Id.* Perhaps that is why the 2021 Rule's "novel analysis has not been applied by any court." *Id.* at 1656. In contrast, the 2024 Rule adopts an analytical scheme that the agency and courts have applied for decades.

Finally, Plaintiffs claim that the 2024 Rule "contradict[s] case law" from the Second and D.C. Circuits, Mot. at 9, which, as the Department acknowledged, "describe the employee's opportunity for profit or loss and the employee's investment as a single factor," 89 Fed. Reg. at 1642 & n.58. But that difference in draftsmanship is insubstantial. As the agency noted, those two circuits "still use the same considerations as the other circuits to inform their economic realities analysis." *Id.* at 1642; *see also id.* at 1655 (explaining that courts generally used the same factors "[d]espite slight variation in the exact number and phrasing"). Both courts use the familiar *Silk* factors to determine "whether, as a matter of economic reality, the workers depend upon someone else's business," and cite—and are cited by—cases from other circuits in applying those factors. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988); *accord Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001). That is exactly what the 2024 Rule does too, despite minor discrepancies in how to group the factors.

Even if the 2024 Rule *did* conflict with those cases, that would have no bearing on the Court's analysis of whether the 2024 Rule is arbitrary and capricious. The Sixth Circuit applies a standard materially indistinct from the 2024 Rule, *compare Off Duty*, 915 F.3d at 1054-55 *with*

15

29 C.F.R. § 795.110(b), and its decisions "remain[] controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Sec'y of HHS*, 774 F.2d 685, 689 (6th Cir. 1985). To hold that the 2024 Rule is arbitrary and capricious, the Court would effectively have to conclude that the Sixth Circuit's own approach is unreasonable. It should decline to do so.

**B. The 2024 Rule does not exceed the Department's authority under the Fair Labor Standards Act.**

**1. The 2024 Rule is consistent with the FLSA.**

The 2024 Rule does not exceed the bounds of the FLSA. To the contrary, the 2024 Rule's economic reality analysis is fully consistent with the FLSA's expansive definition of "employee." The Act defines "employ" to "include[] to suffer or permit to work," 89 Fed. Reg. at 1667; 29 U.S.C. § 203(d)(e)(1), (g)—language that demonstrates Congress's intent for the FLSA to apply broadly and inclusively. 89 Fed. Reg. at 1667 n.216 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that "employ" is defined with "striking breadth"); *U.S. v. Rosenwasser*, 323 U.S. 360, 362 (1945) ("A broader and more comprehensive coverage of employees … would be difficult to frame.")); *see Off Duty*, 915 F.3d at 1054-55 ("The definition of 'employee' in this context 'is strikingly broad.'") (quoting *Keller*, 781 F.3d at 804). Accordingly, the 2024 Rule is consistent with the Act's text and purpose as interpreted by courts because it focuses broadly on a worker's economic dependence on an employer, considering the totality of the circumstances and not assigning any factors a predetermined weight. 89 Fed. Reg. at 1639, 1641.

The 2024 Rule is also consistent with binding judicial precedent. The Supreme Court has repeatedly emphasized that employment status under the economic reality test turns upon the "circumstances of the whole activity," rather than "isolated factors." *Id.* at 1651 n.125 (quoting

16

*Rutherford*, 331 U.S. at 730; citing *Silk*, 331 U.S. at 716, 719 (denying the existence of a "rule of thumb to define the limits of the employer-employee relationship" and determining employment status based on "the total situation")). Similarly, the Sixth Circuit has explained that "the test must account for the full range of factors relevant to a worker's employment status," applying a six-factor test that, it bears repeating, is materially indistinguishable from that provided in the 2024 Rule. *Compare Off Duty*, 915 F.3d at 1054-55 *with* 29 C.F.R. § 795.110(b); *see also* 89 Fed. Reg. at 1651 & nn.126-33 (collecting cases from other circuits).

Plaintiffs' attempts to find daylight between the 2024 Rule and case law are again unavailing. *See* Mot. at 10. As explained above, the 2024 Rule is not inconsistent with decisions from the Second and D.C. Circuits, which would not be controlling on this Court, particularly in light of Sixth Circuit precedent. *See supra* Section II.A. Nor does the 2024 Rule conflict with *Encino Motorcars v. Navarro*, which did not deal with the distinction between employees and independent contractors or any of the Department's guidance on the subject. *See* Mot. at 10. *Encino Motorcars*, which dealt with whether service advisors should be included within the FLSA's exemption for automobile salesmen, partsmen, or mechanics, rejected the approach to statutory interpretation "that *exemptions* to the FLSA should be interpreted narrowly" as lacking any "textual indication" in the statute, and instead directed courts to give the FLSA's exemptions a "fair reading." 138 S. Ct. 1134, 1142 (2018) (emphasis added).

In contrast, as the 2024 Rule explained, "[t]here is a clear textual indication in the Act's definitions, by the inclusion of the 'suffer or permit' language, that broad coverage under the Act was intended." 89 Fed. Reg. at 1668 n.221 (quoting 29 U.S.C. § 203(g). "Moreover, *Encino* did not hold that the FLSA's remedial purpose may never be considered," and other courts, including the Sixth Circuit, "have appropriately continued to consider the purpose of the Act." *Id.*; *see,*

17

*e.g.*, *Off Duty*, 915 F.3d at 1062 ("[W]e remain mindful of the Supreme Court's instruction to avoid a narrow, grudging interpretation of the FLSA and to remember its remedial and humanitarian purpose.") (quotation omitted). *Encino*'s limited holding did not disturb the longstanding Supreme Court and circuit court precedent elucidating the economic reality analysis upon which the 2024 Rule relies, and so it does not undermine the Rule.

### 2. The 2024 Rule is an interpretive rule.

Plaintiffs' other arguments rely on the mistaken assertion that the 2024 Rule is a legislative rule. *See* Mot. at 10 ("[T]he FLSA gives the Department no authority to issue legislative rules…."); *id.* at 11 ("[A]llowing the Department to promulgate legislative rules on this topic would raise significant constitutional concerns."). Because the Rule is an interpretive rule, it neither exceeds the Department's "inherent authority to issue interpretive rules informing the public of the procedures and standards it intends to apply in exercising its discretion" nor raises a non-delegation problem. *Metro. Sch. Dist. of Wayne Twp. v. Davila*, 969 F.2d 485, 490 (7th Cir. 1992); *see also Vanguard Interstate Tours, Inc. v. ICC*, 735 F.2d 591, 596 n.5 (D.C. Cir. 1984) ("[A]n agency has inherent authority to interpret its governing statute.").

As opposed to "legislative rules," which carry the "force and effect of law," *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-03 (1979), "the critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 99 (1995)). An interpretive rule "simply states what the administrative agency thinks the statute means." *First Nat'l Bank of Lexington v. Sanders*, 946 F.2d 1185, 1188 (6th Cir. 1991) (per curiam) (quotation omitted). An agency "does the public a favor if it announces the interpretation in advance of enforcement, whether the

announcement takes the form of a rule or of a policy statement, which the [APA] assimilates to an interpretive rule." *Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 167 (7th Cir. 1996).

Right off the bat, the 2024 Rule indicates its interpretive nature. Section 795.100 (emphasis added) explains that Part 795—where the 2024 Rule's regulations are located— "contains the Department['s] … *general interpretations* for determining whether workers are employees or independent contractors." It continues: "[t]hese *interpretations* are intended to serve as a 'practical guide to employers and employees,'" and "[t]he Administrator of the Department's Wage and Hour Division will use these *interpretations* to guide the performance of their duties under the Act, unless and until [the Department] is otherwise directed by authoritative decisions of the courts or the Administrator concludes upon reexamination of an *interpretation* that it is incorrect." Part 795 is also contained within Subchapter B of the chapter relating to the Wage and Hour Division ("Statements of General Policy or Interpretation Not Directly Related to Regulations"), which explicitly states that "[a]dvisory interpretations announced by the Administrator serve only to indicate the construction of the law which will guide the Administrator," 29 C.F.R. § 775.1, rather than Subchapter A ("Regulations").

The 2024 Rule's preamble further evinces the Department's intent to promulgate not substantive rules but interpretive guidelines derived from the FLSA's text and judicial precedent. As the Department explained, it proposed to replace the 2021 Rule "because that rule was not fully aligned with the FLSA's text as interpreted by the courts or the Department's longstanding analysis." 89 Fed. Reg. at 1649. In contrast, the Department reasoned that the 2024 Rule would "provide more consistent guidance to employers in properly classifying workers as employees or independent contractors, as well as useful guidance to workers on whether they are correctly classified as employees or independent contractors." *Id.* at 1734. These are the hallmarks of an

19

interpretive rule: rather than imposing new legal requirements separate from or in addition to the statute, the 2024 Rule "advise[s] the public of the agency's construction of" the FLSA, *Perez*, 575 U.S. at 97, thereby "do[ing] the public a favor" by providing advance notice of its interpretation. *Hoctor*, 82 F.3d at 167; *see also Harris v. Diamond Dolls of Nevada, LLC*, 2022 WL 4125474, at *2 (D. Nev. July 26, 2022) (noting that "DOL's regulations," including the "Independent Contractor Regulations," "are generally not binding but merely interpretative").

The Department's admitted lack of authority to promulgate legislative rules regarding the distinction between employees and independent contractors, *see* Mot. at 10, confirms that the Department did not intend the 2024 Rule to be legislative at all. Plaintiffs' argument paradoxically insists that the Department must have been engaging in legislative rulemaking, contrary to the Department's express intentions, the absence of any legislative language in the rule itself, and the Department's known lack of authority to promulgate legislative rules[1]—only to then insist that the 2024 Rule is invalid for that very reason. But that attempt to create a supposed non-delegation problem where none exists offends all the ordinary rules of interpretation. *Cf. Nw. Hosp., Inc. v. Hosp. Serv. Corp.*, 687 F.2d 985, 992 (7th Cir. 1982) (explaining that the principle of constitutional avoidance "applies equally to administrative regulations"). Plaintiffs' argument also proves too much. Hypothetically speaking, if the 2024 Rule were a legislative rule, then the 2021 Rule would be as well—meaning that the rule Plaintiffs claim to support would also need to be set aside. That would restore the Department's pre-2021 Rule subregulatory guidance, the substance of which is materially identical to the provisions of the 2024 Rule to which Plaintiffs object.

---

[1]   The Department has repeatedly acknowledged that it lacks authority to promulgate legislative rules on this subject, including in the principal case upon which Plaintiffs rely. *See* Defs.' Cross-Mot. for Summ. J. & Opp. to Pls.' Mot. for Summ. J. at 16, *CWI*, Dkt. No. 23.

Ultimately, Plaintiffs' argument that the 2024 Rule is legislative in nature is entirely based upon a single district court decision, *CWI*, which addressed the 2021 Rule. Mot. at 10-11; *see* 2022 WL 1073346. But that decision, which was vacated by the court of appeals as moot, would not have been controlling on this court, and which did not involve the 2024 Rule, should not be relied upon here. *Cf. Harris*, 2022 WL 4125474, at *2 (rejecting reliance on *CWI*).

The conclusions of the district court in *CWI* are also unpersuasive. Contrary to that court's conclusion, merely changing how the *Department* interprets the FLSA does not alter "existing individual rights and obligations." *Id.* at *6. Those rights and obligations remain set by the FLSA, not by the Department's interpretive guidelines which, like all interpretive rules, "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Perez*, 575 U.S. at 97. In other words, the interpretations espoused in the 2024 Rule (or the 2021 Rule) could never by their own force change rights and obligations, which would instead be determined by a court interpreting the FLSA in the context of a specific case.

The *CWI* court also wrongly concluded that the Department's decision to provide an opportunity for comment suggested that the Department thought notice and comment was required. 2022 WL 1073346, at *6. But "there is nothing in the Act to forbid an agency to use the notice and comment procedure in cases in which it is not required to do so." *Hoctor*, 82 F.3d at 171-72; *see also Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978) (agencies are "free to grant additional procedural rights in the exercise of their discretion"). In promulgating the 2024 Rule (as well as the 2021 Rule and its withdrawal), the Department *chose* to solicit comment to obtain the public's views, and in fact made "several adjustments to the proposed regulations after consideration of the comments received." 89 Fed. Reg. at 1664. Moreover, the Department's choice to utilize notice and comment provides, at

most, a "snippet of evidence of agency intent;" "[h]ere, the snippet is not enough," given that the Department repeatedly characterized the 2024 Rule as interpretive. *Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 423 (D.C. Cir. 1994). To hold that the Department's choice to undertake notice-and-comment procedures rendered the 2024 Rule an invalid legislative rule would penalize the agency for choosing to solicit public input even though it was not required to do so.

For these reasons, the 2024 Rule falls well within the Department's authority to interpret the FLSA; restates a long-accepted interpretation of the FLSA's terms; and represents a reasoned exercise of the agency's discretion. The Court should enter judgment for the Department.

## III.    Plaintiffs are not entitled to the extraordinary relief of a preliminary injunction.

Even if the Court declines to enter judgment for the Department and concludes that Plaintiffs have demonstrated a likelihood of prevailing on the merits, Plaintiffs still are not entitled to a preliminary injunction. Plaintiffs fail to show irreparable injury, much less an injury that outweighs the harm an injunction would do to the Department's efforts to protect workers.

### A.    Plaintiffs have failed to show irreparable injury.

To obtain a preliminary injunction, Plaintiffs have "the burden of establishing a clear case of irreparable injury"—*i.e.*, that they will be irreparably injured before the Court can decide the merits of the case. *Garlock, Inc. v. United Seal, Inc.*, 404 F.2d 256, 257 (6th Cir. 1968) (per curiam). To satisfy that "high standard," Plaintiffs must show that their injuries are "real," "substantial," and "immediate," not speculative. *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiffs must also "demonstrate that irreparable injury is *likely*," not merely possible, "in the absence of an injunction." *Winter v. NRDC*, 555 U.S. 7, 22 (2008).

None of Plaintiffs' asserted injuries withstand scrutiny. Plaintiffs start by relying on the principle that the loss of constitutional freedoms can sometimes constitute irreparable injury, but never identify which of their freedoms the 2024 Rule purportedly violated. Mot. at 12. Plaintiffs'

22

only challenge that even arguably has constitutional implications is their (incorrect) assertion that Congress improperly delegated authority to the Department. *See id.* at 11. But constitutional violations only amount to irreparable injury in certain "areas of constitutional jurisprudence," like the "right of privacy and certain First Amendment claims," *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc); violations of *structural* requirements, like the "separation of powers," are "not invariably … irreparable injur[ies]," *John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017); *see Tiger Lily LLC v. HUD*, 499 F. Supp. 3d 538, 550 (W.D. Tenn. 2020).

Nor do Plaintiffs' allegations of harm, even assuming they were sufficient to establish standing, *but see supra* Part I, come close to meeting the higher threshold required for irreparable injury. Most importantly, Plaintiffs fail to allege that they will suffer any significant injury *before the Court can decide the merits of this case*. The companies for which they work could not realistically face any threat of enforcement action in that short timeframe. Nor are any decisions that their companies may have made fairly traceable to the 2024 Rule, given that the 2024 Rule expressly and repeatedly disclaims any intention or expectation that it would disturb legitimate independent contracting arrangements. *See* 89 Fed. Reg. at 1,638, 1,640, 1,658-59; *cf. New York v. Dep't of Homeland Security*, 969 F.3d 42, 59 (2d Cir. 2020) (relying on the agency's "own predictions" in holding that harms were traceable to the agency's actions).

Even if Plaintiffs could show that the 2024 Rule were likely to inflict *some* costs upon them before the Court can decide the merits, that still would not amount to irreparable injury. Economic loss generally "does not constitute irreparable harm, in and of itself." *Celebrezze v. Nuclear Reg. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). Even where economic loss is "irrecoverable" due to sovereign immunity, *cf.* Mot. 12-13, a plaintiff is "not relieved of its obligation to demonstrate that its harm will be 'great,'" *N. Air Cargo v. U.S. Postal Serv.*, 756 F.

23

Supp. 2d 116, 125 n.6 (D.D.C. 2010), which Plaintiffs here have not done. Compl. ¶¶ 38-47. "Otherwise, a litigant seeking injunctive relief against the government would always satisfy the irreparable injury prong, nullifying that requirement." *CoverDyn v. Moniz*, 68 F. Supp. 3d 34, 49 (D.D.C. 2014). In *Texas v. EPA*, for example, the plaintiffs alleged a threat to the "very existence" of their businesses. 829 F.3d 405, 434 (5th Cir. 2016). In contrast, Plaintiffs here neither show nor allege specific, imminent, and significant threats to their livelihoods.

Finally, Plaintiffs' delay in moving for a preliminary injunction—waiting about 50 days after the 2024 Rule was published on January 10 and until just ten days before the Rule was slated to go into effect on March 11, knowing that their motion would not be ready for decision until after the Rule had taken effect—strongly undercuts their arguments. "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). Thus, "an unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm." *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 405 (6th Cir. 2013); *see Vita-Mix Corp. v. Tristar Prods., Inc.*, 2008 WL 11383504, at *8-9 (N.D. Ohio 2008) (noting the "wealth of case law" holding that delay "undermines [a] belated assertion of irreparable harm"). Plaintiffs' unexplained and inexplicable delay belies any claim that their freelancing activities are in imminent jeopardy.

**B.      The equities and the public interest weigh against a preliminary injunction.**

Because Plaintiffs cannot establish the first two injunction factors, "it is clear they cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009); *see also Daunt v. Benson*, 956 F.3d 396, 422 (6th Cir. 2020) ("Where the federal government is the defendant, the last two factors merge."). To the contrary, setting the 2024 Rule aside in favor of the 2021 Rule would disrupt the Department's efforts to help prevent workers from being

24

misclassified as independent contractors by replacing the Department's reasoned, careful interpretation of the FLSA (the 2024 Rule) with a confusing, novel test that was never applied by any federal court (the 2021 Rule). 89 Fed. Reg. at 1654-56. Such a result would be contrary to the FLSA's fundamental purposes.

Plaintiffs also assert that the "public interest is served by compliance with the APA." Mot. at 13 (quotation omitted). But that attempt to collapse the merits into the public interest factor fails in two ways: Plaintiffs have not actually shown an APA violation, and there is also "inherent harm to an agency" in preventing it from interpreting statutes that "Congress found it in the public interest to direct that [it] develop and enforce." *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008). If the merits are unclear, the importance of ensuring that the Department is free to guide its own employees in performing their duties under the FLSA, and thereby help workers access the full panoply of FLSA protections, should carry the day over speculative assertions about compliance costs. The Court should uphold the Department's efforts to restore an interpretation that faithfully implements the FLSA's broad text and that the Supreme Court, federal circuit courts, and the Department have applied to the benefit of workers for decades.[2]

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for a preliminary injunction and dismiss this case or, in the alternative, enter judgment for the Department.

---

[2]    Plaintiffs did not submit a proposed order or otherwise indicate the scope of their requested relief. To the extent Plaintiffs seek an injunction that would apply to others, such a request should be denied. *See, e.g.*, *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (injunctions must be no broader than "necessary to provide complete relief to the plaintiffs").

Dated: March 15, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Director

*/s/ John T. Lewis*
JOHN T. LEWIS (D.C. Bar No. 1033826)
(admitted *pro hac vice*)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 353-0533
Fax: (202) 616-8460
E-mail: john.t.lewis.iii@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2024, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ John T. Lewis*
John T. Lewis

27