| | |
|---|---|
| **MARGARET LITTMAN and**<br>**JENNIFER CHESAK** | ) |
| | ) |
| | ) |
| **PLAINTIFFS,** | ) |
| | ) |
| **V.** | ) |
| | )   **Case No. 3:24-cv-00194** |
| **UNITED STATES DEPARTMENT OF** | ) |
| **LABOR; JULIE SU, as the acting U.S.** | ) |
| **Secretary of Labor; ADMINISTRATOR** | ) |
| **JESSICA LOOMAN, as head of U.S.** | ) |
| **Department of Labor's Wage and Hour** | ) |
| **Division; and U.S. DEPARTMENT OF** | ) |
| **LABOR WAGE AND HOUR DIVISION** | ) |
| | ) |
| **DEFENDANTS.** | ) |

---

**PLAINTIFFS' COMBINED MEMORANDUM IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT, OPPOSITION TO DEFENDANTS' CROSS-MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

### INTRODUCTION

Plaintiffs Margaret Littman and Jennifer Chesak ("the Freelancers") are independent contractors who have chosen to earn a living through freelance work because of the control, flexibility, and opportunities that it provides them. They challenge the Department's 2024 Rule entitled *Employee or Independent Contractor Classification Under the Fair Labor Standards Act*, 89 Fed. Reg. 1638, which threatens to upend their careers as freelancers. This Court should grant the Freelancers' Motion for Summary Judgment and vacate the 2024 Rule for three reasons.

*First,* the 2024 Rule is arbitrary and capricious. Without reasoned analysis as to why the 2021 Rule was problematic or why the conditions of uncertainty that prompted the 2021 Rule no

Case 3:24-cv-00194    Document 25-1    Filed 04/05/24    Page 1 of 26 PageID #: 190

longer exist, the Department rescinded the 2021 Rule and replaced it with the 2024 Rule. Both the Department's failure to provide a reasoned explanation for changing course and the 2024 Rule's potential to exacerbate the problem that it's trying to solve violate the Administrative Procedure Act's prohibition on arbitrary and capricious agency action.

*Second*, The Department has exceeded its statutory authority in issuing the 2024 Rule because the Department's interpretation of the applicable standard rests on the flawed premise that the FLSA pursues its remedial purpose at all costs. *Third*, and more fundamentally, all agree that the Department has no authority to issue legislative rules to determine whether there's an employment relationship under the FLSA. The Department must therefore hang its hat on the argument that the 2024 Rule is an interpretative, rather than legislative, rule. Yet this argument fails because the 2024 Rule—like other legislative rules—affects the rights and obligations of individuals and businesses.

This Court should grant the Freelancers' Cross-Motion for Summary Judgment.[1]

## STANDARD OF REVIEW

The Department's 12(b)(1) motion is a facial attack on subject matter jurisdiction. *See Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (facial attacks on subject matter jurisdiction question the legal sufficiency of the complaint while factual attacks on jurisdiction disputes the factual predicate for jurisdiction). When reviewing a facial attack on jurisdiction, "a district court takes the allegations in the complaint as true." *Id.* "If those allegations establish federal claims, jurisdiction exists." *Id.*

---

[1] In the alternative, if the Court declines to rule on the parties' summary judgment motions, it should grant the Freelancers' Motion for Preliminary Injunction and deny the Department's Motion to Dismiss.

When reviewing a final agency action on motions for summary judgment, the "usual rules governing summary judgment do not apply." *Oak Ridge Envtl. Peace All. v. Perry*, 412 F. Supp. 3d 786, 808 (E.D. Tenn. 2019) (citations omitted). A court, in a case involving claims under the Administrative Procedure Act (APA), must determine whether the evidence in the administrative record "permitted the agency to make the decision as a matter of law." *Id*. Summary judgment is often an appropriate "mechanism for deciding whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id*. (citations omitted); *Chamber of Com. of United States v. SEC*, 670 F. Supp. 3d 537, 551 (M.D. Tenn. 2023) (in an APA case, the "entire case on review is a question of law, and only a question of law, to be based on the administrative record already assembled") (internal quotation marks omitted).

## ARGUMENT

### I.     This Court has Subject Matter Jurisdiction to Hear the Freelancers' Case

The Freelancers have standing to challenge the Department's 2024 Rule for two reasons. First, the Freelancers have standing because they are the objects of the 2024 Rule. Second, the Freelancers have standing because they satisfy all three elements of standing: (1) an injury-in-fact, (2) that is fairly traceable to the Department's Final Rule, and (3) redressable by a favorable court decision. *See Blachy v. Butcher*, 221 F.3d 896, 909 (6th Cir. 2000).

### a.     *The Freelancers Have Standing Because They are the Objects of the 2024 Rule*

In a challenge to agency action, "standing depends considerably upon whether the plaintiff is himself an object of the action" at issue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). If so, then "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id*.; *see Contender Farms, L.L.P.*

3

*v. United States Dep't of Agric.*, 779 F.3d 258, 265 (5th Cir. 2015) ("Whether someone is in fact an object of a regulation is a flexible inquiry rooted in common sense."); *NCAA v. Governor of N.J.*, 730 F.3d 208, 219 (3d Cir. 2013) ("Injury in fact may be established when the plaintiff himself is the object of the action at issue.").

The Freelancers are plainly the objects of the 2024 Rule. The Freelancers earn their living by working as independent contractors, *see* Verified Complaint ("VC") ¶¶ 8–9, 38, 43, and the Department's stated purpose in enacting the 2024 Rule was to address a perceived problem with worker misclassification. 89 Fed. Reg. 1647 (asserting that the 2021 Rule threatened "an increased risk of FLSA-covered employees being misclassified as independent contractors."). To that end, the Department changed the test for discerning between employees and independent contractors by replacing the 2021 Rule's two-core-factor test with a "totality of the circumstances" analysis containing six non-exhaustive factors. 89 Fed. Reg. 1638–39.

The 2024 Rule thus affects workers like the Freelancers because it changes the very test that employers must use to determine whether an employment relationship exists under the FLSA. If it were otherwise, one would hardly expect an administrative record littered with comments from freelancers, including Ms. Littman herself, objecting that the 2024 Rule would lead to misclassification of independent contractors as employees. *See* 89 Fed. Reg. 1648; Comment from Littman, Margaret, WHD-2022-0003-14158 (noting that the six-factor test in the 2024 Rule "relies heavily on interpretation and will unfairly shift many legitimate independent contractors into employee status."). All told, the 2024 Rule alters how individuals like the Freelancers earn a living and that "level of interference as to their lives" is sufficient to establish standing. *Contender Farms*, 779 F.3d at 265.

*b.* *The Freelancers Have Standing Because They Meet the Injury, Traceability, and Redressability Requirements for Standing*

The Freelancers also have standing because they satisfy the injury, traceability, and redressability requirements for standing. The Department's 2024 Rule inflicts multiple injuries on the Freelancers. *See* 5 U.S.C. § 702 (authorizing judicial review of a final agency action to any person "suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute"); *United States v. Students Challenging Regul. Agency Procedures*, 412 U.S. 669, 689 n.14 (1973) (injury-in-fact analysis helps distinguish persons "with a direct stake in the outcome of a litigation" from persons "with a mere interest in the problem."). For starters, the Department's 2024 Rule threatens "classic pocketbook injury" on the Freelancers. *Tyler v. Hennepin Cnty.*, 143 S. Ct. 1369, 1374 (2023). The "loss of even a small amount of money" suffices to establish injury, but the Department's 2024 could cost the Freelancers "considerably more." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). After all, the Freelancers have spent years earning their living as independent contractors. *See* VC ¶¶ 38–47. The 2024 Rule's adoption of an open-ended test featuring six non-exclusive factors threatens to unravel their economic relationships. *See id.* ¶¶ 35–37, 41, 46 (noting the 2024 Rule makes it harder for businesses to discern between independent contractors and employees and increases the risk that companies will cease to work with the Freelancers).

More to the point, the 2024 Rule injures the Freelancers by imposing "administrative and compliance costs and burdens" on them. *Tennessee v. United States Dep't of Agric.*, 665 F. Supp. 3d 880, 898 (E.D. Tenn. 2023). As individuals warned through the public comments, the 2024 Rule will "lead to significant compliance costs for firms." 89 Fed. Reg. 1734. Firms have already passed along some of those costs to freelancers. *See id.* at 1733 (acknowledging that independent

contractors will incur familiarization costs). Ms. Chesak, for example, has begun incurring hours of unpaid time documenting the specific tasks she performs as an independent contractor. VC ¶ 45; *see also id.* (noting Ms. Chesak's other injuries, such as being required to sign an indemnification agreement and being limited in the number of hours she can work as an independent contractor).[2]

Perhaps recognizing that pocketbook injury and compliance costs suffice to establish injury-in-fact, the Department attempts to cast the Freelancers' injuries as "speculative." *See* Defendants' Consolidated Brief, ECF No. 12, at 9–11. But the administrative record contradicts the Department's assertions. For instance, the Department contends that the Freelancers' injuries are speculative because "the 2024 Rule simply incorporates standards that federal courts have applied for decades." *Id.* at 9.[3] The Freelancers dispute that the 2024 Rule incorporates standards that federal courts have applied for decades because, as one federal court observed, courts have varied in how they have applied the economic realities test. *See Coal. for Workforce Innovation* 2022 U.S. Dist. LEXIS 68401, at *38. The 2021 Rule aimed to provide clarity to workers and companies alike by focusing on two core factors for determining whether an employment relationship exists under the FLSA. *See* 86 Fed. Reg. 1170–75; 89 Fed. Reg. 1649 (acknowledging that the concept of economic dependence in case law is underdeveloped). But the 2024 Rule introduces uncertainty

---

[2] Although Ms. Chesak has already incurred compliance costs as a result of the 2024 Rule, both Plaintiffs have standing because the 2024 Rule threatens them with compliance costs as well as traditional pocketbook injury. In any event, "only one plaintiff needs to have standing in order for the suit to move forward." *Parsons v. United States DOJ*, 801 F.3d 701, 710 (6th Cir. 2015).

[3] The Department's assertions that the 2024 Rule will not lead to misclassification and simply incorporates the applicable caselaw regarding the economic realities test duplicates its arguments into the merits of the Freelancers' APA claim that the 2024 is arbitrary and capricious. "If standing and the merits of a plaintiff's claim are intertwined, courts are encouraged to 'find that jurisdiction exists and deal with the objection as a direct attack on the merits.'" *Sowders v. Scratch Fin., Inc.*, No. 3:23-cv-56, 2024 U.S. Dist. LEXIS 23204, at *10 (S.D. Ohio Feb. 9, 2024) (*citing Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)).

by rescinding the 2021 Rule and replacing it with a vague multi-factor test. 89 Fed. Reg. 1666–67 (noting the objections of many commenters that the "Department's proposal to replace the 'core factor' analysis and return to the totality-of-the-circumstances analysis undermined the clarity of the 2021 IC Rule, creating more uncertainty and confusion"). In the end, there is nothing speculative about the Freelancers' assertion that the 2024 Rule would chill their business practices and introduce uncertainty into their economic affairs when other individuals, a federal court, and the Department itself have echoed the same concerns.

Also unavailing is the Department's dismissal of the Freelancers' fear of losing work because the Department "does not anticipate that independent contractors . . . who are correctly classified as independent contractors under current circuit case law would be reclassified." 89 Fed. Reg. 1659. The Department's predictions do not undermine the Freelancers' fears—particularly because the 2024 Rule affects countless companies and workers nationwide. Therefore, while the Department belittles the Freelancers' concerns as "unreasonable," those concerns echo those voiced in many public comments, including comments submitted by the National Federation of Independent Businesses and the Small Business Administration Office of Advocacy. *Id.* at 1739–40 (SBA concerns that "the Department has severely underestimated the economic impacts of this rule on small businesses and independent contractors" and that "many independent contractors or freelance workers, who may also be small businesses, believe they will lose work because of this rule."); *id.* at 1658 (acknowledging NFIB comment that "[c]ompanies . . . will be less likely to engage a contractor or consultant if there's uncertainty over a worker's status since a finding of misclassification can result in ruinous penalties").

The Freelancers' injuries are traceable to the 2024 Rule. The Department contends that it's implausible that companies have harmed Ms. Chesak "*as a result of the 2024 Rule*, rather than as part of changes to the companies' overall business practices or in response to general concerns about misclassification." ECF No. 12, at 11 (emphasis in original). But there's nothing implausible about the allegation that company measures that harm Ms. Chesak were undertaken "to comply with the 2024 Rule." VC ¶ 45. "When an agency action has a predictable effect . . . on the decisions of third parties, the consequences of those third-party decisions may suffice to establish standing, even when the decisions are illogical or unnecessary." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 59 (2d Cir. 2020) (internal quotation marks omitted). As stated above, the record brims with comments warning that the 2024 Rule would lead to the injuries that now befall Ms. Chesak. And it's hardly illogical for companies to comply with the 2024 Rule—even before the effective date—given the time it takes companies to alter business practices and the threat of criminal and civil penalties for noncompliance. *See* 29 U.S.C. § 216.

The Freelancers' injury is redressable by a favorable court decision vacating the 2024 Rule. Because the 2024 Rule rescinds the 2021 Rule, a favorable decision would reinstate the 2021 Rule, which provided the Freelancers with greater clarity and certainty about how they can structure their economic relationships. *See Coal. for Workforce Innovation*, 2022 U.S. Dist. LEXIS 68401, at *48 (noting that its decision vacating the Department's efforts to withdraw the 2021 Rule meant that the 2021 Rule remained in effect).

The Department fails to cite a single case to support its assertion that the 2021 Rule would no longer exist even if this Court vacated the 2024 Rule. *See* ECF No. 12, at 11. But even if the Department were correct, the Freelancers would still prefer a world without either the 2021 or

2024 Rule to a world with the 2024 Rule. As discussed more fully below in Section II(c), at 14–16, the "economic realities test" developed in the circuit courts contains more limitations and provides more guidance than the 2024 Rule. Thus, regardless of whether this Court reinstates the 2021 Rule or not, an order vacating the 2024 Rule would redress the Freelancers' injuries.

## II. The 2024 Rule Violates the Administrative Procedure Act Because it is Arbitrary and Capricious

The APA requires courts to set aside agency action that is "arbitrary [and] capricious." 5 U.S.C. § 706(2)(A). While agencies may change their policies and rules they must "supply a reasoned analysis for the change." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.,* 463 U.S. 29, 42 (1983). This analysis may go beyond what is required when an agency is acting in the first instance. *Id.* At the very least, an agency must "display awareness that it is changing position" and "show that there are good reasons for the new policy." *Encino Motorcars, LLC v. Navarro,* 579 U.S. 211, 221 (2016) (*Encino I*) (citations omitted). Agency action is "arbitrary and capricious if the agency has . . . offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43. When an agency is rescinding a rule, an agency must also make a reasoned explanation for "disregarding facts and circumstances that underlay or were engendered by the prior policy." *FCC v. Fox TV Stations, Inc.,* 556 U.S. 502, 515–16 (2009) (*Fox I*). Thus, an "'[u]nexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'" *Encino I,* 579 U.S. at 221–22.

The 2024 Rule is arbitrary and capricious for three reasons: First, the Department has not adequately explained why the conditions that prompted the 2021 Rule no longer exist. Second, the

9

Department failed to provide a reasoned explanation for its belief that the 2021 Rule created more uncertainty and increased the risk of misclassification. Third, the Department has failed to show why a return to a broader open-ended "economic realities test" embodied in the 2024 Rule solves the problem the Department is trying to alleviate: uncertainty and misclassification.

a. *The Circuit Courts' Application of the "Economic Realities Test" Prior To The 2021 Rule Was Inconsistent, Unclear, and Resulted in Uncertainty for the Regulated Community*

The administrative record leaves little doubt that before the Department's action in promulgating the 2021 Rule, the "economic realities test" developed for decades in the circuit courts confused businesses and workers alike about whether an employment relationship existed under the FLSA. 86 Fed. Reg. 1170–75; 89 Fed. Reg. 1649 (acknowledging that the concept of economic dependence in case law is underdeveloped); *see also Coal. for Workforce Innovation*, 2022 U.S. Dist. LEXIS 68401, at *38; *Sec'y of Labor, United States Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1539–45 (7th Cir. 1987) (Easterbrook, J., concurring). In promulgating the 2021 Rule, the Department conducted a comprehensive review of inconsistencies in how federal courts have formulated and applied the economic realities test. 86 Fed. Reg. 1170–75. For example, some circuits apply a six-factor test, while others apply a five-factor test. 86 Fed. Reg. 1170; *see, e.g.*, *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976) (five-factor test); *Acosta v. Off Duty Police Servs.*, 915 F.3d 1050, 1055 (6th Cir. 2019) (six-factor test).

What's more, even in circuits that apply the same test, the results vary under very similar fact patterns. *Compare Lauritzen*, 835 F.2d at 1534–35 (applying a six-factor economic reality test to hold that pickle pickers were employees under the FLSA), *with Donovan v. Brandel*, 736 F.2d 1114, 1117 (6th Cir. 1984) (applying the same six-factor economic reality test to hold that pickle pickers were not employees under the FLSA). As Judge Easterbrook aptly observed, the inconsistent

results that courts have reached are largely due to the vagaries of an open-ended "economic realities test":

> It is comforting to know that "economic reality" is the touchstone. One cringes to think that courts might decide these cases on the basis of economic fantasy. But "reality" encompasses millions of facts, and unless we have a legal rule with which to sift the material from the immaterial, we might as well examine the facts through a kaleidoscope.

835 F.2d at 1539 (Easterbrook, J., concurring). Courts in the same jurisdiction have also reached contradictory results when confronted with similar fact patterns. *Compare Cromwell v. Driftwood Elec. Contractor, Inc.,* 348 F. App'x 57 (5th Cir. 2009) (cable splicers hired to perform post-Katrina repairs were employees), *with Thibault v. BellSouth Telecomm.*, 612 F.3d 843 (5th Cir. 2010) (cable splicer hired by the same company under a similar arrangement was an independent contractor); 86. Fed. Reg. 1173. As one federal court lamented, "a worker's classification as an independent contractor or an employee is dependent on the happenstance of geography, i.e., the judicial circuit in which the worker resides or works." *Coal. for Workforce Innovation*, 2022 U.S. Dist. LEXIS 68401, at *48. And as *Cromwell* and *Thibault* demonstrate, similar workers even in the same judicial district may be classified differently. "Fifty years after the Act's passage is too late to say that we still do not have a legal rule to govern these cases." *Lauritzen*, 835 F.2d at 1539 (Easterbrook, J., concurring).

Federal caselaw thus belies the Department's contention that the application of the "economic realities test" has been well-developed and consistent. *See Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 167 (2d Cir. 2014) (stating there is no uniform "economic realities" test); *Coal. for Workforce Innovation*, 2022 U.S. Dist. LEXIS 68401, at *36–38 (detailing the many differences in how courts conduct the "economic realities test"). The Department must provide a reasoned

explanation for "disregarding facts and circumstances that underlay" the promulgation of the prior 2021 Rule. *Fox I*, 556 U.S. at 515–16. Yet the Department finds little support in the administrative record for its current claim that "any purported confusion" giving rise to the 2021 Rule was "overstated." 87 Fed. Reg. 62226. As detailed above, a faithful survey of federal court decisions undermines the Department's contention that there is a "familiar and longstanding standard" in case law. 89 Fed. Reg. 1725. The Department's disregard of the facts that engendered the 2021 Rule is arbitrary and capricious. *Fox I*, 556 U.S. at 515.

   b.  *The 2021 Rule Properly Addressed the Problem of Uncertainty and Was Consistent With the FLSA*

   The 2021 Rule properly focused on the core of the economic realities test by analyzing whether a worker is in business for himself or herself (independent contractor) or was dependent on an employer for work (employee). 86 Fed. Reg. 1168, 1171; *see also Acosta v. Off Duty Police Servs.*, 915 F.3d 1050, 1055 (6th Cir. 2019); *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976). The Department has consistently stated—in both the 2021 and 2024 Rules—that economic dependence is the ultimate inquiry for determining whether an individual is an employee or independent contractor under the FLSA. 89 Fed. Reg. 1648–49. As discussed in the previous subsection, circuit courts have applied different versions of the economic realities test and have reached inconsistent conclusions on similar facts. The Department's 2021 Rule attempted to alleviate the resulting confusion and uncertainty by highlighting two core probative factors—the "nature and degree of the individual's control over the work," and "individual's opportunity for profit or loss." 86 Fed. Reg. 1179–80, 1185–86.

   In issuing the 2021 Rule. the Department detailed the relevant caselaw and concluded that these two core factors drive at the heart of the question of "whether an individual is 'in business

for himself' or is 'dependent upon finding employment in the business of others.'" 86 Fed. Reg. 1197–98 (citations omitted). As the Department explained, some circuit courts had begun to focus primarily on control and the opportunity for profit and loss factors. *Id.*; *see also Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 143–44 (2d Cir. 2017*)*; *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 243 (4th Cir. 2016). Thus, the 2021 Rule was not inconsistent with the FLSA and the main inquiry of economic dependence. 86 Fed. Reg. 1197–98.

Although the Department now criticizes the 2021 Rule for elevating two core factors and improperly narrowing the economic realities test, the Department previously explained that nothing in the economic realities test "require[d] factors to be unweighted or equally weighted." 86 Fed. Reg. 1197. And the 2021 Rule allowed for consideration of three other factors, but only if those other factors were relevant in determining whether an employment relationship exists under the FLSA. *Id.* at 1247. In all, the 2021 Rule sought to provide clarity by sharpening the economic dependence inquiry in a way that is consistent with the FLSA. The Department fails to cast doubt on the 2021 Rule's conclusion that treating all factors as equal "would not focus the inquiry on economic dependence, but rather would distort that analysis." *Id.* at 1203.

c. *The 2024 Rule Exacerbates the Problem It Purports to Solve and Has No Limiting Principle*

The Department's rescission of the 2021 Rule and its implementation of an open-ended balancing test in its place exacerbates the confusion and lack of clarity that it sought to remedy in promulgating the 2021 Rule. The 2024 Rule acknowledges that the 2021 Rule correctly identified the need for greater clarity in determining whether an employment relationship exists under the FLSA. 89 Fed. Reg. 1647 (recognizing that the 2021 Rule correctly identified the need to develop further clarity); *see also* 86 Fed. Reg. 1168–1175, 1178–1196, 1209–1234 (compiling extensive

13

evidence of the confusion parties faced determining whether someone was an employee or independent contractor under FLSA.).

The Department now claims that the 2024 Rule increases clarity, 89 Fed. Reg. 1649, while contending that the 2024 Rule is "materially identical" to the economic realities test as applied by courts for decades. ECF No. 12, at 11; 89 Fed. Reg. 1727. The Department cannot have it both ways. As stated above, courts have applied the economic realities test by using different factors and reaching different results on similar fact patterns. So if the 2024 Rule were truly a reflection of the circuit courts' application of the economic realities test, then the Department's rescission of the 2021 Rule would lead to the sort of constant confusion that prompted the 2021 Rule in the first place. Such a result is itself arbitrary and capricious. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1912 (2020).

The Department's claim that the 2024 Rule is not arbitrary and capricious because it is substantively identical to the Sixth Circuit's interpretation of the economic realities test also fails. *See* ECF No. 12 at 14. Indeed, both this Court and the Sixth Circuit have warned against an open-ended application of the economic realities test.[4] *Wilson v. Guardian Angel Nursing, Inc.*, No. 3:07-0069, 2008 U.S. Dist. LEXIS 59623, at *34 (M.D. Tenn. July 31, 2008) ("Indeed, it requires only a very cursory view of the economic realities factors to recognize that they permit of numerous exceptions and may be dubious indicators."); *Imars v. Contractors Mfg. Servs.*, No. 97-3543, 1998

---

[4] The Department invokes another Sixth Circuit case for its argument that the "Sixth Circuit applies a standard materially indistinct from the 2024 Rule." ECF No. 12, at 15–16 (citing *Off Duty*, 915 F.3d at 1054–55). But although the Sixth Circuit in that case considered six factors, its analysis emphasized three factors—permanency of relationship, opportunity for profit or loss, and right to control—which "require[d] more attention." *Off Duty*, 915 F.3d at 1054–55. In any event, Ms. Littman works with over 20 companies nationwide, VC ¶ 40, so the 2024 Rule affect her rights beyond the Sixth Circuit.

U.S. App. LEXIS 21073, at *16–18 (6th Cir. Aug. 24, 1998) ("We are cognizant of the fact that few of these factors necessarily makes economic sense, and all of the factors are far too easy to manipulate and mold during application to suit a preconceived result," and also stating that the factors "provide mixed results and so tell us very little."). This Court has thus stated that "the portent of these difficulties with the economic realities test is that this Court must proceed with caution in applying it." *Wilson*, No. 3:07-0069, 2008 U.S. Dist. LEXIS 59623, at *36–37. Because of these difficulties, the Sixth Circuit and the district courts have begun to view the determination of FLSA classifications as possible questions for a jury to decide. *See Rounds v. Phil's Kar Kare*, No. 16-13170, 2018 U.S. Dist. LEXIS 30170, at *10 (E.D. Mich. Feb. 26, 2018) (citing *Keller v. Miri Microsystems LLC,* 781 F.3d 799, 804–805 (6th Cir. 2015)). Thus, even within this circuit, there is a recognition of the problematic nature of the "economic realities test."

In any event, the 2024 Rule might be even less precise than the economic realities test that has been formulated in the circuit courts. The 2024 Rule refuses to give any factor more or less weight than the others and adds that the six factors "are not exhaustive." 29 C.F.R. § 795.110. In addition, the 2024 Rule contains a seventh catch-all factor which makes it conceivable that any fact could be relevant in determining whether a worker is an independent contractor or employee. *Id.* The Department also purposefully provides little guidance on how to apply this open-ended totality of circumstances test. 89 Fed. Reg. 1670. It is the Department's position that such an open-ended analysis is a strength rather than a weakness of the 2024 Rule. *Id.* Yet such a formulation requiring an examination of all facts avoids formulating a rule of decision and does nothing to alleviate the confusion about whether a worker is an employee under the FLSA or an independent contractor. *Lauritzen*, 835 F.2d at 1539 (Easterbrook, J., concurring).

15

Although circuit courts were inconsistent in their application of the "economic realities test" before the 2021 Rule, circuit courts have both provided guidance and cabined their application of the economic realities test. For example, this Court "proceeds with caution" in applying the economic realities test and many circuits have limited the examination of factors that are not relevant. *Wilson*, No. 3:07-0069, 2008 U.S. Dist. LEXIS 59623, at *36–37; *see also Parrish v. Premier Directional Drilling*, L.P., 917 F.3d 369, 382 (5th Cir. 2019) (acknowledging that for contractors to follow health-and-safety standards in certain contexts does not suggest "control" for purposes of economic reality test); *McFeeley*, 825 F.3d at 244 (limiting the three factors of the degree of skill, permanence of working relationship, and importance of the services rendered). All told, parties before the 2021 Rule could at least look to their appellate court's jurisprudence for *some* guidance. In contrast, the 2024 Rule provides no limiting principle and its vague multi-factor balancing test invites arbitrary and inconsistent results. *Imars*, 1998 U.S. App. LEXIS 21073, at *16; *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010).

Lastly, the Department's claim that the 2021 Rule would increase the misclassification of FLSA covered employees into independent contractors is a conclusory finding devoid of evidence in the administrative record. "Because the Department does not have data on the number of misclassified workers and because there are inherent challenges in determining the extent to which the rule would reduce this misclassification, much of [its] analysis is presented qualitatively…" 89 Fed. Reg. 1726. What's more, the Department in promulgating the 2024 Rule did not consider the costs to business and workers who wish to remain independent contractors and only conducted a "qualitative" cost-benefit analysis of the 2024 Rule. *Id.* In contrast, the 2021 Rule did consider cost and benefits associated with the 2021 Rule finding that it "is expected to result in cost savings to

firms and workers." 86 Fed. Reg. 1232. The Department also found that the increased clarity would result in hundreds of millions of dollars in net savings. *Id.* at 1211. The Department has not refuted its previously supported conclusions with actual data to conclude that the 2024 Rule will reduce misclassification and result in net savings. This is not "reasoned decision making" and is thus arbitrary and capricious. *Michigan v. EPA*, 576 U.S. 743, 750, 135 S. Ct. 2699, 2706 (2015).

In sum, the Department's inconsistent reasoning that the 2024 Rule brings about more clarity and predictability while being materially identical to the unclear and inconsistent circuit courts' application of the economic realities test highlights the arbitrary and capricious nature of the 2024 Rule. The 2024 Rule exacerbates the problem the 2021 Rule was trying to solve. The Department has failed to provide good reasons for changing its policy or demonstrate that the conditions that prompted the 2021 Rule have changed. The 2024 Rule is therefore arbitrary and capricious and violates the APA.

### III.     The 2024 Rule Violates the Administrative Procedure Act Because it is in Excess of the Department's Statutory Authority

#### a.     *The 2024 Rule Embodies an Expansive Reading of the FLSA in violation of the Supreme Court's holding that the FLSA must be given a Fair Reading*

The Department in promulgating the 2024 Rule relies on the "flawed premise that the FLSA 'pursues' its remedial purpose 'at all costs.'" *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018) (*Encino II*) (*quoting Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013)). While the FLSA's definitions and scope of employment are broader than that of common law, the FLSA was not meant to define all workers as employees. *See Walling v. Portland Terminal* Co., 330 U.S. 148, 152 (1947); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947). The Supreme Court has recently instructed that the FLSA must be given a "fair reading." *Encino II*, 584 U.S. at

89. The Department protests that the holding in *Encino II* was limited to construing the exemptions listed in the FLSA. ECF No. 12, at 17; *see also* 89 Fed. Reg. 1168, n. 220. But the Court's reasoning in reaching that holding was that the dozens of exemptions in the FLSA were "as much a part of the FLSA's purpose" as other provisions in the FLSA. *Encino II*, 584 U.S. at 89 (citing FLSA's overtime-pay requirement). That reasoning undermines the Department's contention that courts must employ one statutory canon to read an FLSA exemption and another statutory canon to read another provision of the FLSA.

After the Supreme Court's decision in *Encino II*, many circuit courts—including the Sixth Circuit—have applied the "fair reading" principle to other provisions of the FLSA. *See Diaz v. Longcore,* 751 F. *App'x* 755, 758 (6th Cir. 2018) (applying a "fair" interpretation to employer as defined in Section 203(d) in the FLSA); *McKay v. Miami-Dade Cnty.*, 36 F.4th 1128, 1133 (11th Cir. 2022) ( applying a "fair reading" to the non-statutory internship exception); *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 412 (2d Cir. 2019) (stating the importance of giving the FLSA a "fair reading" and giving a "fair reading" to whether the FLSA required judicial approval of Rule 68(a) offers of judgment in settling FLSA claims); *Sec'y United States DOL v. Bristol Excavating, Inc.*, 935 F.3d 122, 135 (3d Cir. 2019) ("'[A] fair reading' of the FLSA, neither narrow nor broad, is what is called for."). Thus, when construing whether someone is an employee under the FLSA, the statute must be given a "fair reading." The 2024 Rule's interpretation of the FLSA exceeds statutory authority because it turns on an outdated construction of the FLSA.

   b. *The 2024 Rule is Ultra Vires because it is a Legislative Rule that Affects the Rights and Obligations of Individuals*

The Department concedes that the FLSA gives the Department no authority to issue legislative rules to determine whether there's an employment relationship under the FLSA. *See*

EFC No. 12, at 20. Yet to escape the consequence of this admitted lack of authority, the Department incorrectly argues that the 2024 Rule is an interpretive rule, rather than a legislative rule. "If a pronouncement implements a statute by enacting a legislative-type rule affecting individual rights and obligations, it is likely to be a substantive rule." *Dyer v. Sec'y of Health & Human Servs.*, 889 F.2d 682, 685 (6th Cir. 1989). And if a rule changes the method an agency uses in granting substantial benefits or alters how the agency exercises its authority under a statute, it is a legislative rule. *Brown Express, Inc. v. United States*, 607 F.2d 695, 701 (5th Cir. 1979); *Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1043 (6th Cir. 2018). In contrast, an interpretive rule is "merely a clarification or explanation of an existing statute or rule" *Ohio Dep't of Human Servs. v. United States Dep't of Health & Human Servs.*, 862 F.2d 1228, 1233 (6th Cir. 1988).

The 2024 Rule affects the rights and obligations of private individuals and alters how the Department exercises its duties and enforcement under the FLSA. The 2024 Rule directly states that individuals and businesses may rely on the 2024 Rule in making their "good faith" defense in FLSA litigation. "The interpretations stated in this part may be relied upon in accordance with section 10 of the Portal-to-Portal Act, 29 U.S.C. 251-262." 89 Fed. Reg. 1742; 29 C.F.R. § 795.100; *see also* 29 U.S.C. § 259. The 2024 Rule thus changes the standard in which individuals or businesses may claim the "safe harbor" defense by rescinding the 2021 Rule and adopting a new open-ended standard to determine who is an employee or independent contractor. *See* 29 U.S.C. § 259. And the 2024 Rule will now guide the Department in how it performs and enforces the FLSA. 29 C.F.R. § 795.100. The 2024 Rule also rescinds all previous "administrative rulings, interpretations, practices, or enforcement policies relating to determining who is an employee or independent contractor." *Id*. Thus, the 2024 Rule directly affects how individuals will be classified

under the FLSA (determining whether the rights and obligations under the FLSA apply), and alters

how the Department will perform its duties under the FLSA, which duties include the enforcement

of the Act. *See* 29 U.S.C. § 216 (noting that those who violate the FLSA are subject to criminal

penalties and civil liability). The 2024 Rule therefore changes the rights and obligations private

parties have under the FLSA and is a legislative rule. *See Coal. For Workforce Innovation*, 2022 U.S.

Dist. LEXIS 68401, at *15.

The Department's mere claim that the 2024 Rule is interpretive is both not dispositive and

undermined by the administrative record. *Ohio Dep't of Human Servs* 862 F.2d at 1234.[5] As the

Department admits, one of the key purposes of the 2024 Rule was to rescind the 2021 Rule, in part

because of the Department's perception that the 2021 Rule would result in misclassification

harming workers and competing businesses who correctly classify their employees. 89 Fed. Reg

1638–39, 1658. Based on this reasoning, the Department believes that the 2021 Rule affected the

rights and obligations of private parties. 86 Fed. Reg. 8327 (stating that the 2021 Rule was the first

regulation addressing who is an independent contractor under FLSA and the 2021 Rule created a

new legal standard "for determining employee and independent contractor status under the

FLSA."); *see also Coal. For Workforce Innovation*, 2022 U.S. Dist. LEXIS 68401, at *14.

The 2024 Rule is intended to replace the 2021 Rule in how individuals are classified under

the FLSA. "[I]nterpretive rules cannot 'effec[t] a substantive change in the regulations,' a rule that

---

[5] Similarly unpersuasive is the Department's argument that "the 2024 Rule indicates its interpretative nature." ECF No. 12, at 19. A rule can be legislative even where the agency official promulgating the rule terms it "interpretive rule and general statement of policy" in the federal register. *Chamber of Commerce v. OSHA*, 636 F.2d 464, 466–67 (D.C. Cir. 1980). That's because a court does "not classify a rule as interpretive just because the agency says it is." *Id.* at 468. Instead, "it is the substance of what the (agency) . . . has done which is decisive." *Id.*

'adopt[s] a new position inconsistent with any of the Secretary's existing regulations' is necessarily legislative." *Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) (citations omitted). The 2024 Rule's substantive change in how workers are classified cannot be an interpretive rule because the Rule replaced the test set forth in the 2021 Rule with its own multi-factor test to determine whether an employment relationship exists under the FLSA. As the Department has stated, the purpose of the 2024 Rule was in part to avoid misclassification under the FLSA, which means that it affects individual rights and obligations. 89 Fed. Reg. 1646. In essence, the Department's 2024 Rule rescinded a prior legislative rule (the 2021 Rule) and the 2024 Rule is necessarily legislative. *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (1993) (stating that if a purported "interpretive" rule effectively amended a prior legislative rule, it is a legislative rule).

Other aspects of the 2024 Rule provide more evidence that it is a legislative rule. From 1949 to 2019, the Department only adopted opinion letters on the general question of determining whether someone is an employee or independent contractor under the FLSA. 86 Fed. Reg. 1171; 89 Fed. Reg. 1643–44. The fact that the Department underwent notice and comment for the 2021 Rule (the first time the Department underwent formal rulemaking on the scope of the employment relationship under the FLSA), and then underwent notice and comment to rescind the 2021 Rule and promulgate the 2024 Rule, also suggests that the 2024 Rule is legislative. The Department's conduct thus contradicts its assertion that the 2024 Rule is merely interpretive. *See N.C. Growers' Ass'n v. UFW,* 702 F.3d 755, 765 (4th Cir. 2012). Likewise, the Department published the 2024 Rule in the Code of Federal Regulations (C.F.R. § 795.100-115) which also establishes that the 2024 Rule has "general applicability and legal effect," and is legislative. *Am. Mining Cong.*, 995 F.2d at 1112.

In all, the 2024 Rule contains all the hallmarks of a substantive legislative rule and is not merely an "advisory" interpretive rule.[6]

As the Department recognizes, the FLSA gives the Department no authority to issue legislative rules to determine whether there's an employment relationship under the FLSA. As a legislative rule, the 2024 Rule exceeds the Department's statutory authority and must be set aside. 5 U.S.C. § 706(2)(C). But even if the Department claimed that it could issue legislative rules in determining whether there's an employment relationship under the FLSA, such a construction of the statute would raise constitutional and separation-of-power concerns, including a nondelegation problem. *See Tiger Lily, LLC v. HUD*, 5 F.4th 666, 672 (6th Cir. 2021). This is because Congress in the FLSA gave no standards by which the Department should exercise its discretion on this topic. *See Panama Refin. Co. v. Ryan*, 293 U.S. 388, 418–19 (1935). In addition, such a broad reading of the FLSA would also implicate the major questions doctrine. *See West Virginia v. EPA*, 142 S. Ct. 2587 (2022). "It is the peculiar province of the legislature to prescribe general rules for the government of society…" *INS v. Chadha*, 462 U.S. 919, 967 (1983). Congress has not authorized the Department to issue legislative rules to determine whether there's an employment relationship under the FLSA. The 2024 Rule therefore exceeds the Department's statutory authority and must be set aside. 5 U.S.C. § 706(2)(C).[7]

---

[6] The Department states that if the 2024 Rule is set aside on the basis that it is a legislative rule that the Department had no authority to enact, the 2021 Rule must also be set aside under the same reasoning. But the 2021 Rule is not at issue in this case, and in any event, the Freelancers prefer even the pre–2021 status quo to the 2024 Rule. *See* Section II(c), at 14–16.

[7] Because the 2024 Rule violates the Administrative Procedure Act, this Court "must set it aside." *Mann Construction Inc. v. United States*, 27 F.4th 1138, 1148 (6th Cir. 2022).

## IV.    The Freelancers Satisfy the Remaining Factors for a Preliminary Injunction

This Court should grant Plaintiffs' Motion for Summary Judgment and vacate the 2024 Rule. Such relief would make it unnecessary to decide the other motions in the case. But if the Court were to entertain Plaintiffs' Motion for Preliminary Injunction, it should hold that all the other factors for preliminary relief are satisfied here.

Complying "with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia J., concurring in part). Here, Ms. Chesak has already suffered compliance costs stemming from the 2024 Rule, Ms. Littman will likely incur similar costs, *see* Section I(b), and neither Freelancer can obtain after-the-fact monetary relief to remedy that injury. *See* 5 U.S.C. § 702 (The APA only waives sovereign immunity for relief other than money damages). This alone establishes irreparable harm. *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) ("The federal government's sovereign immunity typically makes monetary losses like these irreparable.").

Enjoining the 2024 Rule properly preserves the position of the parties until the Court decides the merits of the 2024 Rule. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, (1981) (purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held."). While the Freelancers face irreparable harm absent an injunction, no such harm would occur to the Department if the 2021 Rule was temporarily in place.[8] The Department's fear of misclassification if an injunction is granted and the 2021 Rule is put back into

---

[8] Even if the 2021 Rule was not put back in place, the Department cannot claim that a return to an economic realities test that has been applied by courts before 2021 would harm the Department or the public more than the 2024 Rule. That is because the Department contends that the 2024 Rule is "materially identical" to the economic realities test that existed before the 2021 Rule. ECF No. 12, at 20.

23

place is speculative given the Department's admitted lack of data on worker misclassification during the time in which 2021 Rule was in effect. 89 Fed. Reg. 1726. Thus, there is no evidence that a return to the 2021 Rule will damage the public interest or harm the Department. The balance of the hardships and the public interest favor the issuance of a preliminary injunction. If the Court declines to rule on the summary judgment motions, the Court should grant the Freelancers' Motion for Preliminary Injunction until the merits of the case are resolved.

## CONCLUSION

For these reasons, this Court should grant Plaintiffs' Motion for Summary Judgment. In the alternative, this Court should grant Plaintiffs' Motion for Preliminary Injunction and deny Defendants' Motion to Dismiss.

DATED: April 5, 2024

Respectfully submitted,

s/ Wencong Fa
Wencong Fa
Cal. Bar #301679
wen@beacontn.org
BEACON CENTER OF TENNESSEE
1200 Clinton Street, #205
Nashville, TN 37203
Tel.: 615-383-6431
Fax: 615-383-6432
*Counsel for Plaintiffs*
*Admitted to practice only in California.*

s/ Daniel J. Tuklay
Daniel J. Turklay
B.P.R. No. 034600
Turklay Law
11205 Lebanon Rd #51
Mt. Juliet, TN 37122
Tel.: 615-838-5903

24

Fax: 888-868-0014
daniel@turklaylaw.com
*Local Counsel*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2024, I submitted the foregoing **PLAINTIFFS' COMBINED MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT, OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** to the Clerk of the Court via the District Court's CM/ECF system, which served the document on John T. Lewis, who is counsel for the defendants.

s/ Wencong Fa

Wencong Fa
Counsel for Plaintiffs