| | |
|---|---|
| MARGARET LITTMAN and JENNIFER CHESAK | ) ) ) |
| PLAINTIFFS, | ) ) |
| V. | ) ) ) Case No. 3:24-cv-00194 |
| UNITED STATES DEPARTMENT OF LABOR; JULIE SU, as the acting U.S. Secretary of Labor; ADMINISTRATOR JESSICA LOOMAN, as head of U.S. Department of Labor's Wage and Hour Division; and U.S. DEPARTMENT OF LABOR WAGE AND HOUR DIVISION | ) ) ) ) ) ) ) ) ) |
| DEFENDANTS. | ) |

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiffs Margaret Littman and Jennifer Chesak ("the Freelancers") hereby state that the following material facts are undisputed. The Freelancers generally agree with the Defendants (collectively "the Department") that a statement of undisputed facts may be unnecessary in an Administrative Procedure Act ("APA") case. This is because when reviewing claims under the APA, a court examines the administrative record to determine whether agency action is consistent with the APA as a matter of law. *Oak Ridge Envtl. Peace All. v. Perry*, 412 F. Supp. 3d 786, 808 (E.D. Tenn. 2019). The Freelancers have contemporaneously filed a response to Defendants' Statement of Undisputed Material Facts. To avoid duplicative rendition of the facts and material, the Freelancers incorporate their Responses to the Departments' Statement of Undisputed Material Facts and provide this additional statement of undisputed material facts in support of their Cross-Motion for Summary Judgment and in opposition to the Department's Motion for Summary Judgment. Local Rule 56.01(b), (c). To aid the Court, the Freelancers provide the following undisputed material facts:

1

1. Employers covered under the Fair Labor Standards Act ("FLSA") that fail to abide by the requirements outlined in the FLSA are subject to civil liability and criminal penalties. 29 U.S.C. § 216.

RESPONSE:

2. The FLSA defines "employers" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

RESPONSE:

3. An "employee" under FLSA "means any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employ" is further defined as "to suffer or permit to work" 29 U.S.C. § 203(g).

RESPONSE:

4. In determining whether an individual is an employee or independent contractor under the FLSA, the Department and courts have held that economic dependence is the ultimate inquiry. 89 Fed. Reg. 1648–49; *See, e.g.*, *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984).

RESPONSE:

5. The FLSA was not meant to stamp all persons as employees under the Act including independent contractors. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 152, (1947); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947).

RESPONSE:

6. The FLSA does not define "Independent Contractors."

RESPONSE:

7. Between 1938 and 2021, the United States Department of Labor did not engage in any rulemaking to distinguish between employees and independent contractors under the FLSA. Instead, from 1949 to 2019, the Department adopted opinion letters on the general question of determining whether someone is an employee or independent contractor under the FLSA. 86 Fed. Reg. 1171; 89 Fed. Reg. 1643–44.

RESPONSE:

8. Before the published rule on January 7, 2021, Independent Contractor Status Under the Fair Labor Standards Act, 86 Fed. Reg. 1168 (the "2021 Rule"), federal circuit courts developed and formulated versions of the "economic reality" test to determine whether a worker was an employee under the FLSA or an independent contractor. 86 Fed. Reg. 1170.

RESPONSE:

9. The Department's previous position when promulgating the 2021 Rule was that the "economic realities test and its component factors have not always been sufficiently explained or consistently articulated by courts or the Department" and resulted "in uncertainty among the regulated community." 86. Fed. Reg. 1168.

RESPONSE:

10. The Department's stated purpose in proposing the 2021 Rule was to "clarify to stakeholders how to distinguish between employees and independent contractors under the Act," to increase "precision and predictability in the economic reality test's application," and to "benefit workers and businesses and encourage innovation and flexibility in the economy." 86. Fed. Reg. 1168.

RESPONSE:

11. As a result of the Department's goal of increasing clarity, independent contractors and freelancers generally supported the 2021 Rule. 86 Fed. Reg. 1171–72.

RESPONSE:

12. The 2021 Rule thoroughly analyzed the confusion and inconsistent application of the "economic realities test" before the 2021 Rule. 86 Fed. Reg. 1170–75

RESPONSE:

13. The 2021 Rule also included a robust economic analysis of the costs and benefits of the rule and estimated "cost savings due to increased clarity to be $447.1 million per year, and cost savings due to reduced litigation to be $48.7 million per year." 86 Fed. Reg. 1210–11.

RESPONSE:

14. The 2021 Rule adopted two "core factors" when determining whether to classify an individual as an employee or independent contractor: (1) the nature and degree of the individual's control over the work; and (2) the individual's opportunity for profit or loss. The 2021 Rule also listed three additional factors that could be used but stated that they were less probative than the two core factors when determining whether a worker was an employee or an independent contractor. 86 Fed. Reg. 1171.

RESPONSE:

15. After the Department attempted to delay and later withdraw the 2021 Rule, the United States District Court for the Eastern District of Texas in March 2022 held that the Delay and Withdrawal Rules violated the Administrative Procedure Act. *See Coal. for Workforce*

*Innovation v. Walsh*, No. 1:21-CV-130, 2022 U.S. Dist. LEXIS 68401, at *49 (E.D. Tex. Mar. 14, 2022). The court therefore vacated both the Delay and Withdrawal Rules and reinstated the 2021 Rule.

RESPONSE:

16. On October 13, 2022, the Department announced rulemaking to replace the 2021 Rule. 87 Fed. Reg. 62,218. This rule was finalized on January 10, 2024, and went into effect on March 11, 2024. *See* 89 Fed. Reg. 1638 (2024 Rule).

RESPONSE:

17. The 2024 Rule eliminates the core factors of control and opportunity for loss and profit. In its place, the 2024 Rule adopts a new balancing test that includes several factors including "opportunity for profit or loss depending on managerial skill"; "investments by the worker and the employer"; "degree of permanence of the work relationship"; "nature and degree of control"; "extent to which the work performed is an integral part of the employer's business"; and "skill and initiative." 89 Fed. Reg. 1742 (new 29 C.F.R. § 795.110).

RESPONSE:

18. The 2024 Rule also notes that "[a]dditional factors may be relevant … if the factors in some way indicate whether the worker is in business for themsel[ves]." 89 Fed. Reg. 1742 (new 29 C.F.R. § 795.110). The 2024 Rule does not enumerate those other factors.

RESPONSE:

19. The Department does not provide guidance on how to apply or weigh the factors in the 2024 Rule. 89 Fed. Reg. 1670.

RESPONSE:

20. Although the Department in the 2024 Rule contends that the 2021 Rule would increase confusion, the Department in the 2024 Rule agreed "that the 2021 IC Rule identified a need to further develop and center the concept of economic dependence." 89 Fed. Reg. 1647.

RESPONSE:

21. The Department's stated purpose in enacting the 2024 Rule was to address a perceived problem with worker misclassification. 89 Fed. Reg. 1647.

RESPONSE:

22. The Department did "not have data on the number of misclassified workers" when promulgating the 2024 Rule. 89 Fed. Reg. 1726.

RESPONSE:

23. The Department "provided a qualitative analysis" for its cost and benefit analysis in the 2024 Rule. 89. Fed. Reg. 1726.

RESPONSE:

24. The Department asserts, in the 2024 Rule, that the test employed by the 2024 Rule "is essentially identical to the standard it applied for decades prior to the 2021 IC Rule." 89 Fed. Reg 1727.

RESPONSE:

25. Many independent contractors, including freelancer groups, opposed the 2024 Rule out of concern that the 2024 Rule would lead to misclassification of independent contractors as employees. 89 Fed. Reg. 1648.

RESPONSE:

26. The 2024 Rule as codified states that individuals and businesses may rely upon the 2024 Rule in making their "good faith" defense in FLSA litigation. 89 Fed. Reg. 1742; 29 C.F.R. § 795.100; *see also* 29 U.S.C. § 259. Therefore, businesses can no longer avail themselves of a "safe harbor" defense by complying with the 2021 Rule's test.

RESPONSE:

27. The 2024 Rule now guides the performance of the Department's duties under the Act and rescinds all previous "administrative rulings, interpretations, practices, or enforcement policies relating to determining who is an employee or independent contractor under the Act [that] are inconsistent or in conflict with the interpretations stated in this part…" 29 C.F.R. § 795.100.

RESPONSE:

28. Plaintiff Margaret Littman has been a freelance writer for roughly 30 years and now works as an independent contractor for over 20 companies nationwide. Verified Complaint ("VC") ¶ 8, ¶ 38, ¶ 40; ECF No. 1

RESPONSE:

29. Ms. Littman does not wish to be classified as an employee and wishes to continue her work as an independent contractor. VC ¶ 39.

RESPONSE:

30. Under the 2021 Rule, Ms. Littman was able to confidently predict how her commercial relationships would be evaluated and could engage with publishers and clients with a degree of certainty. VC ¶ 41.

RESPONSE:

31. Due to the 2024 Rule's open-ended and non-exhaustive balancing test, Ms. Littman now faces uncertainty and increased risk that companies will misclassify Ms. Littman as an employee and cease to work with her. VC ¶¶ 41–42.

RESPONSE:

32. Plaintiff Jennifer Chesak has been an independent contractor and freelance writer since 2010. VC ¶ 43.

RESPONSE:

33. Ms. Chesak works with companies that, to comply with the 2024 Rule, have taken measures that harm Ms. Chesak. One company has begun requiring Ms. Chesak to spend many unpaid hours documenting precise tasks she performs as a freelancer. Another company has

limited the number of hours Ms. Chesak can work as a freelancer. And another company required Ms. Chesak to sign an agreement to indemnify the company if it was found liable for misclassifying Ms. Chesak. VC ¶ 45.

      RESPONSE:

34.      Ms. Chesak does not wish to be classified as an employee and wishes to continue her work as an independent contractor. VC ¶ 44.

      RESPONSE:

35.      Under the 2021 Rule, Ms. Chesak was able to confidently predict how her commercial relationships would be evaluated and could engage with publishers and clients with a degree of certainty. VC ¶ 47.

      RESPONSE:

36.      Due to the 2024 Rule's open-ended and non-exhaustive balancing test, Ms. Chesak now faces uncertainty and an increased risk that companies will misclassify Ms. Chesak as an employee and cease to work with her. VC ¶¶ 46–47.

      RESPONSE:

11

Case 3:24-cv-00194   Document 25-2   Filed 04/05/24   Page 11 of 13 PageID #: 226

DATED: April 5, 2024

Respectfully submitted,

s/ Wencong Fa
Wencong Fa
Cal. Bar #301679
wen@beacontn.org
BEACON CENTER OF TENNESSEE
1200 Clinton Street, #205
Nashville, TN 37203
Tel.: 615-383-6431
Fax: 615-383-6432
*Counsel for Plaintiffs*
*Admitted to practice only in California.*

s/ Daniel J. Tuklay
Daniel J. Turklay
B.P.R. No. 034600
Turklay Law
11205 Lebanon Rd #51
Mt. Juliet, TN 37122
Tel.: 615-838-5903
Fax: 888-868-0014
daniel@turklaylaw.com
*Local Counsel*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024, I submitted the foregoing **PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS** to the Clerk of the Court via the District Court's CM/ECF system, which served the document on John T. Lewis, who is counsel for the defendants in this case. I also certify that, pursuant to this Court's rules, I emailed a Word copy of the foregoing document to Mr. Lewis.

s/ Wencong Fa<br>
Wencong Fa<br>
Counsel for Plaintiffs