# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| MARGARET LITTMAN, et al., | No. 3:24-cv-194 |
| *Plaintiffs*, | Judge Waverly D. Crenshaw, Jr. |
| v. | Magistrate Judge Barbara D. Holmes |
| UNITED STATES DEPARTMENT OF LABOR, et al., | |
| *Defendants.* | |

## DEFENDANTS' CONSOLIDATED BRIEF IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Director

JOHN T. LEWIS (D.C. Bar No. 1033826)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 353-0533
Fax: (202) 616-8460
E-mail: john.t.lewis.iii@usdoj.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................ ii

Introduction ......................................................................................................................... 1

Argument .............................................................................................................................. 2

I.      The Court should dismiss this case for lack of subject-matter jurisdiction. ...................... 2

II.     In the alternative, the Court should enter judgment for the Department. ........................... 7

        A.      The 2024 Rule is not arbitrary and capricious. ..................................................... 7

        B.      The 2024 Rule does not exceed the Department's authority under the Fair Labor
                Standards Act. ................................................................................................ 14

                1.      The 2024 Rule is consistent with the FLSA. ........................................... 14

                2.      The 2024 Rule is an interpretive rule. .................................................... 15

Conclusion .......................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Off Duty Police Servs., Inc.*,
  915 F.3d 1050 (6th Cir. 2019) ..................................................................................*passim*

*Air Excursions LLC v. Yellen*,
  66 F.4th 272 (D.C. Cir. 2023) .................................................................................. 6

*Allen v. Wright*,
  468 U.S. 737 (1984) ................................................................................................ 4

*Am. Chemistry Council v. Dep't of Transp.*,
  468 F.3d 810 (D.C. Cir. 2006) ................................................................................ 6

*Am. Min. Cong. v. Mine Safety & Health Admin.*,
  995 F.2d 1106 (D.C. Cir. 1993) .............................................................................. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 6

*Brit. Caledonian Airways, Ltd. v. Civil Aero. Bd.*,
  584 F.2d 982 (D.C. Cir. 1978) ................................................................................ 18

*Brown Exp., Inc. v. United States*,
  607 F.2d 695 (5th Cir. 1979) .................................................................................. 17

*Chamber of Commerce v. OSHA*,
  636 F.2d 464 (D.C. Cir. 1980) ................................................................................ 16

*Coal. for Workforce Innovation v. Walsh*,
  No. 1:21-CV-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022) .......................... 18

*Cromwell v. Driftwood Elec. Contractors, Inc.*,
  348 F. App'x 57 (5th Cir. 2009) .............................................................................. 10

*Donovan v. Brandel*,
  736 F.2d 1114 (6th Cir. 1984) ................................................................................ 9

*Dyer v. Sec'y of Health & Hum. Servs.*,
  889 F.2d 682 (6th Cir. 1989) .................................................................................. 17

*Encino Motorcars, LLC v. Navarro*,
  584 U.S. 79 (2018) ................................................................................................ 14, 15

Case 3:24-cv-00194    Document 27    Filed 04/19/24    Page 3 of 27 PageID #: 247

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ..................................................................................7

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021) .................................................................... 7, 13, 14

*Flight Training Int'l, Inc. v. FAA*,
   58 F.4th 234 (5th Cir. 2023) ..................................................................18

*Frisard's Trasp., LLC v. U.S. Dep't of Labor*,
   No. 2:24-cv-347 (E.D. La. Mar. 8, 2024) ...............................................2

*Golden & Zimmerman, LLC v. Domenech*,
   599 F.3d 426 (4th Cir. 2010) .................................................................16

*Harris v. Diamond Dolls of Nevada, LLC*,
   No. 3:19-cv-00598-RCJ-CBC, 2022 WL 4125474 (D. Nev. July 26, 2022) .................... 15-16

*Hobbs v. Petroplex Pipe & Constr., Inc.*,
   946 F.3d 824 (5th Cir. 2020) ...................................................................9

*Keller v. Miri Microsystems LLC*,
   781 F.3d 799 (6th Cir. 2015) ...........................................................12, 15

*Little Sisters of the Poor v. Pennsylvania*,
   591 U.S. 657 (2020) ..........................................................................7, 13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................3, 4

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ...............................................................................19

*Mann Constr., Inc. v. United States*,
   27 F.4th 1138 (6th Cir. 2022) ...............................................................16

*Monroe v. FTS USA, LLC*,
   860 F.3d 389 (6th Cir. 2017) .................................................................15

*Moore v. Fowinkle*,
   512 F.2d 629 (6th Cir. 1975) ............................................................5, 19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .................................................................................13

*Ohio v. Becerra*,
   87 F.4th 759 (6th Cir. 2023) ...................................................................7

*Perez v. Mortg. Bankers Ass'n*,
  575 U.S. 92 (2015) ............................................................... 15, 16, 17

*Phillips v. DeWine*,
  841 F.3d 405 (6th Cir. 2016) ........................................................ 3, 4

*R.K. v. Lee*,
  53 F.4th 995 (6th Cir. 2022) .......................................................... 4

*Schickel v. Dilger*,
  925 F.3d 858 (6th Cir. 2019) ......................................................... 3

*Sec'y of Labor v. Lauritzen*,
  835 F.2d 1529 (7th Cir. 1987) ....................................................... 9

*Shalala v. Guernsey Memorial Hosp.*,
  514 U.S. 87 (1995) ..................................................................... 15

*Sierra Club v. EPA*,
  60 F.4th 1008 (6th Cir. 2023) ...................................................... 19

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .................................................................... 3

*Thibault v. Bellsouth Telecomms., Inc.*,
  612 F.3d 843 (5th Cir. 2010) ....................................................... 10

*Twin Rivers Paper Co. LLC v. SEC*,
  934 F.3d 607 (D.C. Cir. 2019) ...................................................... 6

*United States v. Silk*,
  331 U.S. 704 (1947) ................................................................... 11

*Waskul v. Washtenaw Cnty. Cmty Mental Health*,
  900 F.3d 250 (6th Cir. 2018) ........................................................ 2

*Wright v. Spaulding*,
  939 F.3d 695 (6th Cir. 2019) ....................................................... 15

**Statutes, Rules, and Regulations**

29 U.S.C.
  § 203 ...................................................................................... 14
  § 206(a) ................................................................................... 3
  § 207(a) ................................................................................... 3
  § 259(a) .................................................................................. 17

29 C.F.R.

Part 795 .............................................................................................................................. 19

§ 795.110(b) ......................................................................................................................... 8

89 Fed. Reg. 1638 ....................................................................................................... *passim*

**Other Authorities**

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2020-18 (Nov. 30, 2020),
  https://perma.cc/MG5V-X6S5 ............................................................................................. 17

# INTRODUCTION

In its opening brief, the Department demonstrated that the 2024 Rule is wholly consistent with how the Supreme Court and federal circuit courts, including the Sixth Circuit, have interpreted the Fair Labor Standards Act's ("FLSA") "strikingly broad" definition of "employee." *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055, 1059 (6th Cir. 2019). Plaintiffs' opposition and cross-motion fails to provide any basis for sweeping away an analysis that has guided the Department, the courts, and the public in determining whether a worker should properly be classified as an employee or an independent contractor under the FLSA since as early as the 1940s. Plaintiffs' challenge to the 2024 Rule should therefore be rejected.

As a threshold matter, Plaintiffs lack Article III standing, so this case should be dismissed for lack of subject-matter jurisdiction. Plaintiffs insist that the 2024 Rule "could" cost them money, "threatens" their economic relationships, and "introduce[s] uncertainty into their economic affairs." PMSJ at 5-7.[1] Far from supporting Plaintiffs' theories of harm, these statements only confirm how speculative they are. And rather than provide evidence of how the 2024 Rule *will* harm their freelancing activities *in particular*, Plaintiffs double down on broad assertions about how the 2024 Rule *might* affect employers and workers *in general*. That is not enough for Plaintiffs to meet their burden to establish an Article III case or controversy.

To the extent the Court reaches the merits, it should enter judgment for the Department. The Department reasonably concluded that the 2024 Rule would, by adopting an analysis drawn directly from Supreme Court and federal circuit precedent, reduce confusion and provide a familiar, consistent approach. Indeed, Plaintiffs now suggest that the 2024 Rule will cause

---

[1] For ease of reference, the Department refers to Plaintiffs' brief in support of their preliminary injunction motion, ECF No. 7-1, as "PI Mot."; Defendants' summary judgment brief, ECF No. 12, as "DMSJ"; and Plaintiffs' summary judgment brief, ECF No. 25-1, as "PMSJ."

1

confusion precisely *because* it relies on case law (with which Plaintiffs appear to disagree). But Plaintiffs' disagreement with the law concerning FLSA classification and their preference for the novel and mechanistic standards of the 2021 Rule is insufficient to carry an arbitrary-and-capricious claim. The 2024 Rule also reflects a fair reading of the FLSA as interpreted by courts, notwithstanding Plaintiffs' mistaken assumption that the Supreme Court's decision in *Encino Motorcars v. Navarro* somehow precludes that interpretation. Finally, the 2024 Rule is a valid interpretive rule because it expresses the Department's interpretation of the FLSA and does not impose or change any substantive legal requirements.

For these reasons, the Court should deny Plaintiffs' motion for a preliminary injunction and cross-motion for summary judgment, and dismiss this case or, in the alternative, enter judgment for the Department.[2]

## ARGUMENT

### I.   The Court should dismiss this case for lack of subject-matter jurisdiction.

As the Department explained in its opening brief, Plaintiffs have not provided anything more than speculation and conclusory allegations about the potential effects of the 2024 Rule on their freelancing activities. *See* DMSJ at 9-11. Plaintiffs bear the burden of providing evidence establishing that they have a "substantial likelihood of standing," *Waskul v. Washtenaw Cnty. Cmty Mental Health*, 900 F.3d 250, 255 n.3 (6th Cir. 2018) (quotations omitted)—*i.e.*, that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

---

[2]   The United States District Court for the Eastern District of Louisiana recently denied a motion seeking a preliminary injunction of the 2024 Rule in a separate challenge filed by several Louisiana-based moving companies. *See* Minute Order, *Frisard's Transp., LLC v. U.S. Dep't of Labor*, No. 2:24-cv-00347 (E.D. La. Mar. 8, 2024), ECF No. 19. The Court held that the plaintiffs failed to show irreparable harm and that their likelihood of success on the merits "is at least questionable," noting that the 2024 Rule "seems to be a resurrection of a position that had been in effect for some 70 or 80 years." Transcript of Mar. 8, 2024 Tel. Status. Conf. at 20:13-25, *Frisard's Transp.*, ECF No. 20.

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs still have not met that burden, and so this case should be dismissed.

Perhaps recognizing that they cannot establish the requisite elements of Article III standing, Plaintiffs insist that they automatically have standing because they qualify as "objects" of the 2024 Rule. PMSJ at 3-4. That is incorrect. In determining whether a plaintiff is the object of a regulation, "the relevant question is whether [they] are within the group of individuals whose conduct the [regulation] regulates." *Phillips v. DeWine*, 841 F.3d 405, 414-15 (6th Cir. 2016); *see Schickel v. Dilger*, 925 F.3d 858, 866 (6th Cir. 2019) (holding that legislators seeking to challenge regulations on lobbyists were "not the object of the lobbying restrictions"). Leaving aside that, as a valid interpretive rule, the 2024 Rule does not regulate anyone, Plaintiffs do not fall within this definition: the 2024 Rule interprets the FLSA, which imposes minimum wage and overtime pay (among other) requirements on *employers*. 29 U.S.C. §§ 206(a), 207(a). The 2024 Rule does not impose any requirements on *workers*, whether they be employees or independent contractors. Plaintiffs assert that the 2024 Rule "affects" them because it "changes the very test that employers must use," PMSJ at 4, but—and setting aside the falsity of that assertion—that does not render Plaintiffs the *object* of the 2024 Rule. To the contrary, it confirms that Plaintiffs are alleging injury from how the 2024 Rule might affect *someone else—i.e.*, the businesses with which they work. *See also id.* at 8 (asserting that Ms. Chesak was harmed by companies' third-party decisions).

Because Plaintiffs are not the object of the 2024 Rule, their burden on standing is higher. Where "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation … of *someone else*, much more is needed" to demonstrate Article III standing. *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 562 (1992). Because "causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction," "it becomes the burden of the plaintiff to adduce facts showing" that the regulated third party will make choices "in such manner as to produce causation and permit redressability of injury." *Id.* Thus, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)).

Regardless, whether Plaintiffs are viewed as objects or not, they fail to demonstrate that the 2024 Rule will harm them in any way. Plaintiffs assert that the 2024 Rule "*could* cost" them money and "*threatens* to unravel their economic relationships." PMSJ at 5 (emphasis added). But that is precisely the sort of "conjectural and hypothetical," *Phillips*, 841 F.3d at 416—not to mention "speculative," *R.K. v. Lee*, 53 F.4th 995, 999 (6th Cir. 2022)—injury that does not suffice for standing purposes. Plaintiffs also provide no factual basis for their assertion that firms have passed along any compliance costs to them personally or to any independent contractors. They cite to the 2024 Rule's acknowledgement that some workers who are independent contractors will spend time reading the Rule, *see* PMSJ at 5 (citing 89 Fed. Reg. 1638, 1733), but that has nothing to do with whether firms are likely to pass along any costs, and merely deciding to read a federal rule does not confer Article III standing to challenge it. Even if Plaintiffs *had* demonstrated that some businesses will pass along costs to some independent contractors, that still does not equate to demonstrating that *the businesses with which they work* will suffer costs that the businesses will then pass on to *them.*

Plaintiffs also have no cogent response to the fact that the 2024 Rule simply adopts standards that federal courts have applied for decades, under which Plaintiffs have worked

4

without incident. DMSJ at 10-11. Plaintiffs try to intertwine their standing arguments with the merits by insisting that the 2024 Rule deviates from the case law concerning worker classification under the FLSA. PMSJ at 6-7 & n.3. But the premise of Plaintiffs' arbitrary-and-capricious arguments is that the 2024 Rule will purportedly result in confusion because it *is* consistent with case law. *See id.* at 9-16. And it is that general consistency that belies Plaintiffs' assertions of harm, because Plaintiffs purportedly worked as independent contractors under that case law for many years. Moreover, Plaintiffs still do not allege that the companies for which they worked changed their practices in ways favorable to them after the 2021 Rule was promulgated, further underscoring the tenuous connection between the 2024 Rule and Plaintiffs' assertions of harm. DMSJ at 11. To the contrary, Plaintiffs admit that they would be perfectly happy to live under the standards circuit courts applied prior to the 2021 Rule, and by extension, the analysis set forth by the 2024 Rule. PMSJ at 8-9.[3]

Plaintiffs' concerns are all the more speculative considering that the Department explicitly rejected the premise that the 2024 Rule would lead to the reclassification of properly classified independent contractors. After all, the 2024 Rule does nothing more than explain how the Department will interpret the FLSA in its enforcement efforts. *See* DMSJ at 7, 10. Plaintiffs attempt to patch these holes in their standing theory by relying on various comments that were critical of the 2024 Rule. PMSJ at 7. But the Department expressly disagreed with those comments, *see* 89 Fed. Reg. at 1658, 1739-40, and the mere fact that these unsworn,

---

[3]    Plaintiffs are incorrect that a decision vacating the interpretive regulatory text of the 2024 Rule would automatically "reinstate" the 2021 Rule. Plaintiffs' claims focus on alleged infirmities with the 2024 Rule's interpretive regulatory text, not with the Department's independent decision to rescind the 2021 Rule, and the 2024 Rule contains a severability clause indicating that the rescission is severable from the rest of the 2024 Rule. 89 Fed. Reg. at 1724-25; *see also Moore v. Fowinkle*, 512 F.2d 629, 632 (6th Cir. 1975) ("[I]t is the duty of the courts to give effect to a severability clause.").

uncorroborated statements were submitted to the agency is not indicative of their accuracy.

Moreover, these general assertions about the economic effects of the 2024 Rule again do not

meet Plaintiffs' burden to show that the 2024 Rule will affect *them in particular*. Even assuming

*some* businesses choose not to hire independent contractors, that does not necessarily mean that

Plaintiffs' companies will refuse to hire *them. Cf., e.g.*, *Twin Rivers Paper Co. LLC v. SEC*, 934

F.3d 607, 614 (D.C. Cir. 2019) ("[N]one of the comments tied these harms to any identified

members [of the plaintiffs]."); *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 819

(D.C. Cir. 2006) (declining to "assum[e] a link between the petitioners' comments in the

administrative record" and their assertions of "imminent dangers").

Plaintiffs also fail to rehabilitate their allegations concerning Ms. Chesak. Rather than

provide facts to corroborate the assertion that the companies for which Ms. Chesak works have

imposed additional requirements upon her *because of* the 2024 Rule, Plaintiffs assert that

"there's nothing implausible" or "illogical" about assuming that the 2024 Rule is the cause.

PMSJ at 8. But simply alleging that those companies may have acted in ways that are "consistent

with" the 2024 Rule "'stops short of the line between possibility and plausibility of entitlement

to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 557 (2007)); *see also Air Excursions LLC v. Yellen*, 66 F.4th 272, 278 (D.C. Cir. 2023)

("The plausibility standard requires 'more than a sheer possibility' that the plaintiff has standing

to sue.") (quoting *Iqbal*, 556 U.S. at 678). It is equally possible that the companies for which Ms.

Chesak works have chosen to alter their practices for reasons that have nothing to do with the

2024 Rule or fears of misclassification at all, and Plaintiffs' "'naked assertions' devoid of

'further factual enhancement,' *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), are

insufficient to support Plaintiffs' position.

For these reasons, Plaintiffs have failed to establish that they possess Article III standing, and this case should be dismissed for lack of subject-matter jurisdiction.

## II.     In the alternative, the Court should enter judgment for the Department.

Plaintiffs do not object to advancing the trial on the merits under Rule 65(a)(2). *See* PMSJ at 2 n.1, 3, 23; DMSJ at 8-9. Because the Department has already produced the certified list of contents of the administrative record, all of which is publicly available, no additional factual development is needed for the Court to decide this case. Thus, to the extent the Court concludes that it has jurisdiction and reaches the merits, it should enter judgment for the Department on all of Plaintiffs' claims.

### A.     The 2024 Rule is not arbitrary and capricious.

The Department is entitled to judgment on Plaintiffs' arbitrary-and-capricious claim. The basic framework that applies to this claim is well-settled. *See* DMSJ at 12. The agency need only "articulate a satisfactory explanation for [its] action including a rational connection between the facts found and the choice made." *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 682 (2020). Under this "deferential" standard, a court "simply ensures that the agency has acted within a zone of reasonableness," and "may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Although Plaintiffs suggest that an agency must provide an explanation for changing interpretations "beyond what is required when an agency is acting in the first instance," PMSJ at 9; *see also id.* at 17, it is black-letter law that courts "do not apply greater scrutiny to agency action that changes a prior policy," *Ohio v. Becerra*, 87 F.4th 759, 772 (6th Cir. 2023). An agency need only show that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

As explained in the Department's opening brief, the 2024 Rule is consistent "with the FLSA's text as interpreted by the courts … as well as decades of case law." 89 Fed. Reg. at 1649. In contrast, the 2021 Rule "introduced a new analysis regarding employee or independent contractor classification that was materially different from the longstanding analysis applied by courts," and which could therefore produce "confusion and uncertainty." *Id.* at 1653. The Department's conclusions in this regard were entirely reasonable, and should be upheld.

Plaintiffs' arbitrary-and-capricious claim boils down to the assertion that the 2024 Rule somehow *created* uncertainty and confusion by returning to the standards that the Supreme Court and federal circuit courts, including the Sixth Circuit, have applied for decades. *See, e.g.*, PMSJ at 10 ("[T]he 'economic realities test' developed for decades in the circuit courts confused businesses and workers alike…."); *id.* at 14 ("[I]f the 2024 Rule were truly a reflection of the circuit courts' application of the economic realities test, then the Department's rescission of the 2021 Rule would lead to the sort of constant confusion that prompted the 2021 Rule in the first place."). That argument is self-refuting. It cannot be arbitrary for the Department to defer to the wisdom and experience of the federal courts by adopting an analysis drawn directly from judicial precedent, and concluding otherwise would, among other things, require this Court to reject the very analysis used by the Sixth Circuit. *Compare Off Duty*, 915 F.3d at 1054-55 *with* 29 C.F.R. § 795.110(b). That common-sense proposition should dispose of Plaintiffs' claim.

In any event, Plaintiffs' attacks on the 2024 Rule (and binding court of appeals precedent) are misguided. To start, existing case law is neither "inconsistent" nor "unclear." PMSJ at 10. Every circuit court applies a similar analysis drawn directly from the Supreme Court's thorough and repeated explication of the economic-reality analysis. *See* 89 Fed. Reg. at 1638-42 & nn.52-53. To the extent that the concept of economic dependence is

"underdeveloped" in the case law, the Department reasonably addressed that concern by "elaborating on the general meaning of economic dependence" and "explaining how each of the six factors can illuminate the distinction between economic dependence on the employer for work and being in business for oneself." *Id.* at 1649. As they did in their opening brief, *see* DMSJ at 15, Plaintiffs vastly overstate the differences between the formulations used by different circuits. Plaintiffs point to the different numbers of factors used by the Fifth and Sixth Circuits, but even the 2021 Rule recognized that, although "[t]he Fifth Circuit has not adopted the sixth factor" utilized by the Sixth Circuit, "which analyzes the integrality of the work," it "has at times assessed integrality as an additional factor." 86 Fed. Reg. at 1170 (citing *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 836 (5th Cir. 2020)).

Plaintiffs object that circuits have reached different outcomes even in applying the same economic-reality analysis to similar fact patterns, but some disagreement is to be expected in a system of regional circuits that allows each court to make its own determination on the application of the law to each case presented. The two cases cited by Plaintiffs, *Lauritzen* and *Brandel*, simply reached different conclusions about how the individual economic reality factors applied to the facts before them. *See Sec'y of Labor v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987); *Donovan v. Brandel*, 736 F.2d 1114 (6th Cir. 1984). Indeed, the two cases diverged on the *very factors*—control and opportunity for profit and loss—designated as "core" by the 2021 Rule, *Lauritzen*, 835 F.2d at 1536-37, demonstrating that the 2021 Rule would not have resolved their disagreement. Finally, as both *Lauritzen* and the 2024 Rule recognized, *Brandel* has been "narrowed and distinguished" within the Sixth Circuit. 89 Fed. Reg. at 1686 n.329 (quoting *Lauritzen*, 835 F.2d at 1536-37). It is better interpreted as an outlier, rather than a reflection of some underlying defect in the economic-reality analysis.

9

Plaintiffs fare no better in trying to find discrepancies within the *same* circuit. PMSJ at 10-11. They describe the Fifth Circuit's decisions in *Cromwell* and *Thibault* as "reach[ing] contradictory results when confronted with similar fact patterns," *id.* at 11, but those cases in fact reached different conclusions based on the different facts presented. Take it from the Fifth Circuit itself: "the splicers in *Cromwell* did 'not have the same temporary, project-by-project, on-again-off-again relationship with their purported employers'" as they did in *Thibault*. *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 849 (5th Cir. 2010) (quoting *Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 F. App'x 57, 60 (5th Cir. 2009)). Moreover, the Court reasoned that "Thibault [was] a sophisticated, intelligent businessman who entered into a contractual relationship to perform a specific job for the defendants," and was therefore "not economically dependant [sic]" on his purported employer. *Id.* There is no basis for assuming that the analysis provided by the 2021 Rule would have led the court to reach the same result in both cases despite such different factual circumstances.

Nor can Plaintiffs identify any material discrepancies between the 2024 Rule and the formulation of the economic-reality test that the *Sixth* Circuit has announced. Plaintiffs instead rely on unpublished cases offering various criticisms of the economic-reality test. PMSJ at 14-15. But neither those cases, nor cases treating classification as a jury question, indicate that the 2024 Rule is out of step with how the Sixth Circuit has conducted the economic-reality analysis. Plaintiffs also make it seem as if the Sixth Circuit's decision in *Off Duty* assigned arbitrary weight to certain factors, PMSJ at 14 n.4, but the Court's statement that those factors—including permanency, a factor *not* identified as core in the 2021 Rule—"require[d] more attention" meant that those factors were more difficult in that case, not necessarily more important. *Off Duty,* 915 F.3d at 1054-55, 1057. The Court then emphasized that, "[t]o accomplish" the FLSA's

10

humanitarian purpose, "the test must account for the *full range* of factors relevant to a worker's employment status." *Id.* at 1062 (emphasis added). The analysis set forth by the 2024 Rule similarly accounts for the full range of factors and recognizes that a decisionmaker may assign certain factors greater weight based on the facts and circumstances before them.[4]

These cases, and the detailed analysis provided in the 2024 Rule, confirm the Department's view that courts are generally aligned in their formulation and application of the economic-reality test, as well as the Department's decision to adopt that general alignment as the cornerstone of its interpretation. The point is not that courts will always reach the same results notwithstanding factual differences—no test or standard could claim to have that effect—but that applying an analysis derived from Supreme Court and circuit precedent, rather than a novel analysis never applied by *any* court, is more likely to reduce confusion and foster consistency. Although Plaintiffs may disagree with the Department's approach, they provide no basis for setting it aside.

In particular, Plaintiffs cannot seriously contend that the 2021 Rule would yield *greater* clarity. *See* DMSJ at 12-13. Because the economic-reality factors are tools that help determine whether, *under the totality of the circumstances*, a worker is economically dependent on their employer for work or is in business for themselves, giving excess weight to two of the factors is directly contrary to case law and would limit the analysis's intended flexibility. *See* 89 Fed. Reg. at 1641 ("No one factor is controlling nor is the list complete.") (quoting *United States v. Silk*, 331 U.S. 704, 716 (1947)); *Off Duty*, 915 F.3d at 1055 ("None of these factors is determinative

---

[4]    Plaintiffs assert that the Sixth Circuit's analysis should not be controlling because "Ms. Littman works with over 20 companies nationwide," PMSJ at 14 n.4, but Ms. Littman is based in Tennessee, within the Sixth Circuit, and she chose to file her case in a district where Sixth Circuit precedent is binding. In any event, the 2024 Rule is consistent with how the Supreme Court and all of the federal circuit courts have applied the economic-reality analysis.

11

on its own, and each must be considered 'with an eye toward the ultimate question—the worker's economic dependence on or independence from' the alleged employer.") (quoting *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 (6th Cir. 2015)). For similar reasons, Plaintiffs' criticism of the 2024 Rule for declining to assign arbitrary weights to the factors or to rule out other potential factors is contrary to precedent. PMSJ at 15.

Moreover, Plaintiffs ignore the confusion and uncertainty that the 2021 Rule would have introduced. *See* DMSJ at 15. In deciding whether to follow the 2021 Rule's interpretation, courts would have needed to discern what its new interpretation meant (including how it weighed and narrowed certain factors) and then to decide whether to apply it or their own standards from precedent (or some combination). 89 Fed. Reg. at 1654. These questions could have taken years of litigation in different circuits to sort out, and businesses operating nationwide would have faced the prospect of familiarizing themselves with multiple standards for determining who is an employee or independent contractor under the FLSA, resulting in greater confusion and uncertainty. *Id.*

Plaintiffs defend the 2021 Rule by relying on its flawed approach of trying to discern which factors were in fact outcome-determinative in circuit court decisions applying the economic-reality analysis. PMSJ at 12-13. As the Department explained, however, the cases the 2021 Rule relied upon "do not, themselves, elevate these two factors—rather, the 2021 [] Rule made assumptions about the reasoning behind the courts' decisions that are not clear from the decisions themselves and in some cases are contrary to the decisions' instructions that the test should not be applied in a mechanical fashion." 89 Fed. Reg. at 1651. Moreover, the mere fact that the two factors pointed toward the ultimate outcome whenever they aligned is unsurprising, and does not warrant the conclusion that those two factors are somehow the most important. It is

12

generally the case that, if any two factors in a multifactor test point toward the same outcome, it is more likely that the outcome indicated by those two factors will align with the ultimate outcome. *Id.* at 1652. Indeed, the 2021 Rule did not address whether a *different* combination of two factors would yield similar results. *Id.* In any event, the 2024 Rule's analysis would support a decisionmaker giving certain factors greater weight in any given case. It simply does not put a thumb on the scale before the weighing even begins, as did the 2021 Rule.

Plaintiffs' remaining arguments miss the mark. Nothing in the 2024 Rule precludes parties from "look[ing] to their appellate court's jurisprudence" for guidance, PMSJ at 16; to the contrary, the Department explicitly derived the 2024 Rule from that jurisprudence. It is the 2021 Rule that deviated from Supreme Court and circuit precedent. Plaintiffs also fault the Department for relying on qualitative analyses of the risk of misclassification and the costs and benefits of the 2024 Rule. *Id.* at 16-17. However, "[i]t is not infrequent that the available data does not settle a regulatory issue and the agency must then exercise its judgment in moving from the facts and probabilities on the record to a policy conclusion." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). The Department "acknowledged the gaps in the data," *Prometheus Radio Project*, 592 U.S. at 425, but nevertheless assessed both the potential benefits and costs for businesses and workers before arriving at its chosen course of action. 89 Fed. Reg. at 1726, 1733-36. "The APA requires no more." *Prometheus Radio Project*, 592 U.S. at 427.

In promulgating the 2024 Rule, the Department "articulate[d] a satisfactory explanation for [its] action including a rational connection between the facts found and the choice made," *Little Sisters of the Poor*, 591 U.S. at 682 (citation omitted), and acted well within the "zone of

13

reasonableness," *Prometheus Radio Project*, 592 U.S. at 423. The Department is therefore entitled to judgment on Plaintiffs' arbitrary-and-capricious claim.

**B.    The 2024 Rule does not exceed the Department's authority under the Fair Labor Standards Act.**

**1.    The 2024 Rule is consistent with the FLSA.**

As the Department explained in its opening brief, the 2024 Rule also correctly interprets the FLSA's expansive definition of employee. *See* DMSJ at 16-18. Plaintiffs have no response to the Department's showing that the FLSA's definition of "employ," which "includes to suffer or permit to work," 29 U.S.C. § 203(d), (e)(1), (g), demonstrates Congress's intent for the FLSA to apply broadly, *see* 89 Fed. Reg. at 1667 & n.216, or that the 2024 Rule's formulation of the economic reality analysis is substantively identical to the test applied by the Supreme Court and the Sixth Circuit, *see Off Duty*, 915 F.3d at 1054-55. Instead, Plaintiffs again assert that the 2024 Rule "relies on the flawed premise that the FLSA pursues its remedial purpose at all costs." PMSJ at 17 (quoting *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018). That assertion remains incorrect for the reasons provided in the Department's opening brief: the 2024 Rule in no way relies on that premise, and in any event, Plaintiffs overstate the holding in *Encino*.

The 2024 Rule relies on the "clear textual indication in the Act's definitions, by the inclusion of the 'suffer or permit' language, that broad coverage under the Act was intended." 89 Fed. Reg. at 1668 n.221 (quoting 29 U.S.C. § 203(g). Thus, even applying a "fair reading" approach, "such broad coverage would be a 'fair' interpretation under *Encino* because the broad scope of who is an employee under the FLSA comes from the definitions themselves and not any 'narrow-construction' principle." *Id.* Nor does the 2024 Rule "define all workers as employees." PMSJ at 17. To the contrary, it expressly recognizes that some workers are independent contractors, and "is not intended to disrupt the businesses of independent contractors who are, as

14

a matter of economic reality, in business for themselves," 89 Fed. Reg. at 1638. The 2024 Rule is therefore consistent with a "fair reading" of the FLSA.

Moreover, *Encino* "did not hold that the FLSA's remedial purpose may never be considered." 89 Fed. Reg. at 1668 n.221. By its terms, it rejected "the principle that *exemptions* to the FLSA should be construed narrowly," *Encino*, 584 U.S. at 88-89 (emphasis added); the case did not involve, and so the Court had no occasion to consider, the scope of the FLSA's definitions or other provisions. *See Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019) ("[O]nly *holdings* are binding, not *dicta*."). Nor can Plaintiffs point to any published Sixth Circuit case holding that courts must ignore the remedial purposes of the FLSA entirely in interpreting its broad statutory language. The Sixth Circuit has continued to emphasize that, in applying "the FLSA's 'strikingly broad' definition of 'employee,'" the court must "remain mindful of the Supreme Court's instruction to avoid 'a narrow, grudging interpretation of the FLSA' and 'to remember its remedial and humanitarian purpose.'" *Off Duty*, 915 F.3d at 1062 (quoting *Keller*, 781 F.3d at 804; *Monroe v. FTS USA, LLC*, 860 F.3d 389, 403 (6th Cir. 2017)). *Encino* provides no basis for setting aside the Department's interpretation of the FLSA.

### 2. The 2024 Rule is an interpretive rule.

The Department also did not exceed its authority by issuing an interpretive rule "advis[ing] the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 99 (1995)). Virtually every feature of the rule indicates its interpretive nature: it contains the Department's "general interpretations" of the FLSA; it is located in the part of the Wage and Hour Division chapter dealing with "Statements of General Policy or Interpretation Not Directly Related to Regulations"; and it repeatedly refers to providing "guidance" to employers and workers. DMSJ at 19-20; *see also Harris v. Diamond*

15

*Dolls of Nevada, LLC*, No. 3:19-cv-00598-RCJ-CBC, 2022 WL 4125474, at *2 (D. Nev. July 26, 2022) (noting that "DOL's regulations," including the "Independent Contractor Regulations," "are generally not binding but merely interpretive"). Plaintiffs' objection that courts do "'not classify a rule as interpretive just because the agency says it is,'" PMSJ at 20 n.5 (quoting *Chamber of Commerce v. OSHA*, 636 F.2d 464, 468 (D.C. Cir. 1980), omits the first part of the quoted sentence: that "[t]he administrative agency's own label *is indicative* but not dispositive" of whether a rule is interpretive or legislative. *Chamber of Commerce*, 636 F.2d at 468 (emphasis added). Nothing in the 2024 Rule indicates that the agency intended it to have binding legal effect. Indeed, it would have been strange for the Department to promulgate the 2024 Rule as a legislative rule, given the Department's repeated acknowledgment that it lacks the authority to promulgate legislative rules on this subject. DMSJ at 20.

Moreover, the content of the 2024 Rule confirms how the agency explicitly and repeatedly characterized it. Contrary to Plaintiffs' assertions, *see* PMSJ at 19, the 2024 Rule does not change the rights and obligations of private parties under the FLSA, because the Rule simply "articulate[s] what [the Department] thinks [the FLSA] means." *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1143 (6th Cir. 2022). The Rule does not itself "*determine* the law or the consequences of not following it"; rather, it "*inform[s]*" the public of what the Department thinks "the law, previously enacted or adopted" in the FLSA, "is." *Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010). Indeed, the Department's interpretation of the law, as set forth in the 2024 Rule, "do[es] not have the force and effect of law and [is] not accorded that weight in the adjudicatory process." *Perez*, 575 U.S. at 97. The rights and obligations of employers and workers would instead be determined by a court interpreting the FLSA in the context of a specific case, not by the 2024 Rule.

16

Plaintiffs nonetheless argue that the 2024 Rule is legislative because, like many of the Department's interpretive rules and guidance documents, it states that employers may rely on it in asserting a so-called "good faith" defense under the FLSA. PMSJ at 19-20. But the FLSA provides that such a defense may be based on "*any* written administrative regulation, order, ruling, approval, or *interpretation*" of the Wage and Hour Division. 29 U.S.C. § 259(a) (emphasis added). The Division often issues opinion letters that satisfy—and similarly reference—the defense. *See, e.g.*, U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2020-18 (Nov. 30, 2020), https://perma.cc/MG5V-X6S5. This does not transform the letters, which do not go through notice and comment, into legislative rules. To the contrary, the Supreme Court expressly recognized in *Perez*, which dealt with a Division opinion letter, that provisions like Section 259 serve to "shelter regulated entities from liability when they act in conformance with previous agency *interpretations*." 575 U.S. at 106 (emphasis added).

Nor does the fact that the 2024 Rule guides the Department in its enforcement of the FLSA render the rule legislative in nature. Of course an agency's interpretation of one of its governing statutes will guide its enforcement efforts; announcing the agency's view is the "*critical feature* of interpretive rules." *Id.* at 97 (emphasis added). In arguing that a rule is legislative if it "alters how the agency exercises its authority under a statute," PMSJ at 19, Plaintiffs rely on inapposite case law dealing with the separate notice-and-comment exception for policy statements, not interpretive rules. *See, e.g.*, *Dyer v. Sec'y of Health & Hum. Servs.*, 889 F.2d 682, 685 (6th Cir. 1989) (per curiam) ("general, non-binding policy statement"); *Brown Exp., Inc. v. United States*, 607 F.2d 695, 701 (5th Cir. 1979) ("general statement of Commission policy"). However, the Department has never asserted that the 2024 Rule (or the 2021 Rule) is a general statement of policy as opposed to an interpretive rule. In the context of interpretive rules,

17

providing direction to agency staff "tells one little about whether a rule is interpretive," *Am. Min. Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1111 (D.C. Cir. 1993), and so courts have generally "reject[ed] the proposition that a rule cannot be interpretive if it limits discretion." *Flight Training Int'l, Inc. v. FAA*, 58 F.4th 234, 242 (5th Cir. 2023).

Plaintiffs incorrectly assert that the Department treated the 2021 Rule as a legislative rule, and so the 2024 Rule must be as well. PMSJ at 20. The Department has consistently taken the position that the 2021 Rule was interpretive in nature. *See, e.g.*, *Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 WL 1073346, at *5 (E.D. Tex. Mar. 14, 2022). The Department's concerns that confusion among employers regarding how to apply the analysis in the 2021 Rule might place employees at greater risk of misclassification do not indicate otherwise. Those concerns speak to the potential *practical* impact if other decisionmakers were to apply the interpretation of the FLSA offered in the 2021 Rule, not to whether the 2021 Rule itself would change legal rights and obligations. Moreover, the fact that an interpretive rule may have "significant practical effects" does not convert it to a legislative rule. *Brit. Caledonian Airways, Ltd. v. Civil Aero. Bd.*, 584 F.2d 982, 991 (D.C. Cir. 1978).

Plaintiffs' remaining arguments fare no better. *See* PMSJ at 21-22. Although they rely on the Department's decision to undergo notice and comment, they have no response to the Department's showing that its decision to undergo notice and comment was voluntary, and the agency should not be punished (by, for example, invalidating the Rule) for undertaking more process than necessary. *See* DMSJ at 21-22. Plaintiffs also rely on the fact that the Department published the 2024 Rule in the Code of Federal Regulations. But, as noted *supra* page 16, the Department did so in the Wage and Hour Division subchapter pertaining to "Statements of General Policy or Interpretation Not Directly Related to Regulations," not the subchapter labeled

18

"Regulations." *See* 29 C.F.R. Part 795. All in all, these are not the "hallmarks of a substantive legislative rule." PMSJ at 22.

In sum, the 2024 Rule falls well within the Department's inherent authority to interpret the FLSA's broad definition of employee. The Department is therefore entitled to judgment on all of Plaintiffs' claims.[5]

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for a preliminary injunction and cross-motion for summary judgment, and dismiss this case or, in the alternative, enter judgment for the Department.

Dated: April 19, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Director

*/s/ John T. Lewis*
JOHN T. LEWIS (D.C. Bar No. 1033826)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW

---

[5]  To the extent the Court disagrees and enters judgment for Plaintiffs, it should do no more than remand the 2024 Rule to the agency without vacating it. *Cf.* PMSJ at 22 n.7. The Department "may be able readily to cure a defect in its explanation" of the 2024 Rule, and vacating the Rule in the interim would cause unnecessary confusion for employers and workers. *Sierra Club v. EPA*, 60 F.4th 1008, 1022 (6th Cir. 2023) (quotation omitted).

If the Court were to instead conclude that vacatur is warranted, it should limit that relief in two ways. First, it should give effect to the 2024 Rule's severability clause by severing the deficient provisions of the interpretive regulatory text of the 2024 Rule from the Department's independent decision to rescind the 2021 Rule. 89 Fed. Reg. at 1724-25; *see also Moore*, 512 F.2d at 632 ("[I]t is the duty of the courts to give effect to a severability clause."). Second, because relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," any remedy should be limited to Plaintiffs. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quotation omitted).

19

Washington, D.C. 20530
Tel: (202) 353-0533
Fax: (202) 616-8460
E-mail: john.t.lewis.iii@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2024, a copy of Defendants' Consolidated Brief in Opposition to Plaintiffs' Cross-Motion for Summary Judgment and Reply in Support of Defendants' Cross-Motion to Dismiss or, in the Alternative, for Summary Judgment was filed electronically via the Court's ECF system. Copies were sent to the following counsel of record by operation of the Court's electronic filing system:

Daniel J. Turklay
115 E Main Street
Suite F
Lebanon, TN 37087
615-838-5903
daniel@turklaylaw.com

Wencong Fa
Beacon Center of Tennessee
1200 Clinton Street
Suite 205
Nashville, TN 37203
615-383-6431
wen@beacontn.org

*Counsel for Plaintiffs*

*/s/ John T. Lewis*
John T. Lewis