UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| MARGARET LITTMAN, *et al.*, | ) |
|---|---|
| Plaintiffs, | ) |
| v. | ) No. 3:24-cv-00194 |
| UNITED STATES DEPARTMENT OF LABOR, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Margaret Littman and Jennifer Chesak have sued the U.S. Department of Labor ("DOL"),[1] alleging that its recent rule about how employers should classify their workers as employees or independent contractors under the Fair Labor Standards Act ("FLSA"), is unlawful under the Administrative Procedure Act ("APA") and the United States Constitution. Now before the Court is the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 41) recommending that the Court deny Plaintiffs' Motions for Preliminary Injunction (Doc. No. 7) and Summary Judgment (Doc. No. 25), grant Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 11), and dismiss this case for lack standing. Plaintiffs filed timely objections to the R&R (Doc. No. 45), and Defendants responded (Doc. No. 46). For the following reasons, the R&R will be approved and adopted.

---

[1] The named defendants are the DOL; the DOL's Labor Wage and Hour Division; Julie Su in her official capacity as the U.S. Secretary of Labor; and Jessica Looman in her official capacity as the head of the DOL's Labor Wage and Hour Division. For ease of reference, the Court will collectively refer to defendants as "DOL." The Court further notes that, as of the date of this Memorandum Opinion, Vince Micone is the current U.S. Secretary of Labor, and the position of head of the DOL's Labor Wage and Hour Division currently is vacant.

I.  **BACKGROUND**

   A.  <u>Facts and Procedural History</u>

The Court will not repeat the entire factual background and procedural history of this case because it is explained in detail in the R&R (Doc. No. 41 at 2–7), but some limited background is helpful to place the R&R and the Court's analysis in context.

Littman and Chesak are Nashville-based freelance writers who make a living as independent contractors for different companies. (<u>See</u> Doc. No. 1 ¶¶ 38–44). Plaintiffs prefer to earn their living by working as independent contractors, rather than employees, because "it provides them with the opportunity to write about topics that they find interesting, flexibility to work hours that best suit their needs, and control over their careers." (<u>Id.</u> ¶ 1). The reason why this distinction has legal significance is because the FLSA's wage, hours, and recordkeeping requirements apply only to employees, which are defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA does not apply to independent contractors. <u>Gilbo v. Agment, LLC</u>, 831 F. App'x 772, 775 (6th Cir. 2020). It is important for employers to properly classify their workers as employees or independent contractors because they may face civil and criminal penalties if they do not comply with the FLSA's requirements for their employees. <u>See</u> 29 U.S.C. § 216. The problem is that the FLSA does not define the term "independent contractor," and the statutory text does not provide any test or guidance for how employers should differentiate between employees and independent contractors.

Prior to 2021, courts attempted to step in and create their own test for distinguishing employees from independent contractors under the FLSA. The Supreme Court developed "what has come to be known as the economic realities test," which asks "whether, as a matter of economic reality, the worker was economically dependent on the employer for work (thus rendering them an employee) or is in business for themselves (thus rendering them an independent contractor)." <u>Colt</u>

2

& Joe Trucking, LLC v. U.S. Dep't of Labor, 2025 WL 56658, at *1 (D.N.M. Jan. 9, 2025) (internal quotation marks omitted). When applying this economic reality test, courts in the Sixth Circuit, for example, analyzed and balanced the following six factors:

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; . . . 5) the degree of the alleged employer's right to control the manner in which the work is performed[; . . . and 6)] whether the service rendered is an integral part of the alleged employer's business.

Gilbo, 831 F. App'x at 775 (quoting Keller v. Miri Microsystems LLC, 781 F.3d 799, 807 (6th Cir. 2020)). Plaintiffs do not allege or argue that they were ever classified as employees under any version of the pre-2021 economic reality test.

In January 2021, the DOL issued a rule that created a five-factor test for differentiating between employees and independent contractors. See 86 Fed. Reg. 1168 ("2021 Rule"). The 2021 Rule designated two of those factors as "core factors": (1) the nature and degree of control over the work, and (2) the worker's opportunity for profit or loss. Id. at 1644–45. The other three factors were deemed "highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." Id. at 1645.

Then, in 2024, the DOL replaced the 2021 Rule's two-core-factor test with a new rule that resembled the pre-2021 economic realities test. 89 Fed. Reg. 1638 ("2024 Rule"). The 2024 Rule created six "economic reality factors" meant to "guide an assessment of the economic realities of the working relationship and the question of economic dependence.'" Id. at 1742. Those six factors are: (1) "Opportunity for profit or loss depending on managerial skill"; (2) "Investments by the worker and the potential employer"; (3) "Degree of permanence of the work relationship"; (4) "Nature and degree of control"; (5) "Extent to which the work performed is an integral part of

3

the potential employer's business"; and (6) "Skill and initiative." Id. at 1742–73. The 2024 Rule became effective on March 11, 2024. Id. at 1638.

Plaintiffs allege that "[i]t will be harder for businesses and workers to distinguish between independent contractors and employees under the 2024 Rule than it was for businesses and workers to do so under the 2021 Rule." (Doc. No. 1 ¶ 35). Plaintiffs argue that this "confusion and uncertainty" "increases the risk" that businesses will misclassify them as employees rather than as independent contractors, which in turn "will chill" their future business practices. (Id. ¶¶ 41–42, 46–47). In addition to Plaintiffs' identical allegations of injury, Chesak separately alleges that some companies have already taken harmful measures against her to comply with the 2024 Rule. This includes requiring her "to spend many unpaid hours documenting precise tasks she performs as a freelancer," limiting "the number of hours [she] can work," and requiring her "to sign an agreement to indemnify the company if it were found liable for misclassifying" her as an independent contractor. (Id. ¶ 45).

As a result of these alleged injuries, Plaintiffs brought the instant lawsuit against the DOL to challenge the 2024 Rule as unconstitutional. Specifically, they allege the 2024 Rule violates the Administrative Procedure Act because the DOL: (1) failed to provide a reasoned explanation for its shift from the 2021 Rule's two-factor test to the 2024 Rule's six-factor test, and (2) lacked statutory authority under the FLSA to promulgate the 2024 Rule. (Id. ¶¶ 48–57). Plaintiffs also claim that the 2024 Rule violates the nondelegation doctrine. (Id. ¶ 63). In their prayer for relief, Plaintiffs request that the Court enter a preliminary and permanent injunction prohibiting the DOL from enforcing the 2024 Rule, and a declaratory judgment holding that the 2024 Rule is unlawful and should be set aside. (Id. at 12 ("Prayer For Relief")).

Now before the Court are the following three motions: (1) Plaintiffs' Motion for Preliminary Injunction (Doc. No. 7); (2) Defendants' Cross-Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 11); and (3) Plaintiffs' Cross-Motion for Summary Judgment (Doc. No. 25). These motions are fully-briefed and ripe for review.

B. The Magistrate Judge's Recommended Dispositions

Having exhaustively considered the parties' pending motions, the Magistrate Judge recommends dismissal for lack of standing because Plaintiffs "have failed to demonstrate, for the purposes of their [pending motions], that they will suffer an 'actual or imminent' injury related to the 2024 Rule." (Doc. No. 41 at 16). As the Magistrate Judge summarized, Plaintiffs have the burden[2] to establish Article III standing by demonstrating they: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560). Concreteness refers to a harm that is "real, and not abstract." Id. (citation and internal quotation marks omitted).

The Magistrate Judge made several findings to support her recommendation. She first found that Plaintiffs did not demonstrate any future "imminent harm" because "there is no evidence

---

[2] The Magistrate Judge analyzed the threshold standing issue under the summary judgment standard of Federal Rule of Civil Procedure 56, rather than the motion to dismiss standard of Rule 12(b)(6), "because the litigation is past the pleading stage and at the summary judgment stage." (Doc. No. 41 at 13). The Court agrees with that approach and will likewise apply the Rule 56 standard, which provides that summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).

in the record . . . to show that the DOL or any other entity has classified or will classify Plaintiffs in a particular way because of the 2024 Rule; that companies have faced or will face liability because of the 2024 Rule; or that companies have passed or will pass costs on to Plaintiffs because of the 2024 Rule." (Doc. No. 41 at 21). "In other words, [Plaintiffs] have not demonstrated a substantial risk that companies will cease to work with them or that their future business practices will be chilled because of the implementation of the 2024 Rule." (Id. at 17).

She also found that Plaintiffs have not demonstrated any actual past harm, other than Chesak's individual allegations that some unnamed companies seeking to comply with the 2024 Rule are "requiring her to spend unpaid hours documenting tasks she performs as a freelancer, limiting the number of hours she can work as a freelancer, and requiring her to sign an agreement to indemnify the company if it were found liable for misclassifying her." (Id. at 21). The Magistrate Judge further found that although these allegations "come closer to establishing" an injury in fact, these alleged injuries are not traceable to the 2024 Rule because there is no evidence that these unnamed companies took these measures "to comply with the 2024 Rule" as opposed to other unrelated business reasons. (Id. at 22–23). Nor are these injuries redressable by a favorable judicial decision because "it is the actions of these unnamed third-party companies, and not Defendants that have directly harmed Plaintiff Chesak." (Id. at 21–22).

"For these reasons," the Magistrate Judge recommends that the Court dismiss this case for lack of subject matter jurisdiction because "Plaintiffs lack standing to pursue their claims for injunctive and declaratory relief." (Id. at 23). Plaintiffs now object to that recommendation on several grounds. (See Doc. No. 45-1).

II. **STANDARD OF REVIEW**

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial motion, the district court must review *de novo* any portion of the report and

recommendation to which a proper objection is made. Hotlman v. Saul, 441 F. Supp. 3d 586, 590 (M.D. Tenn. 2020); see also Fed. R. Civ. P. 72(b)(1)(C); 28 U.S.C. § 636(b)(1)(C). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(1)(C); 28 U.S.C. § 636(b)(1)(C). Only "specific written objections" to a magistrate judge's proposed factual findings and legal conclusions are considered "proper" for the district court's consideration. Fed. R. Civ. P. 72(b)(2).

This Court's Local Rules also require that proper objections "must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made . . . to apprise the District Judge of the bases for the objections." L.R. 72.02(a). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." Cole v. Yukins, 7 F. App'x 354, 356 (6th Cir. 2001) (citing Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995)). "[A]n 'objection' that does nothing more than state a disagreement with a [Magistrate Judge's] suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." J.A. v. Smith Cty. School Dist., 364 F. Supp. 3d 803, 812 (M.D. Tenn. Mar. 6, 2019) (quoting VanDiver v. Martin, 304 F. Supp. 2d 934, 938 (E.D. Mich 2004)).

### III. PLAINTIFFS' OBJECTIONS

Plaintiffs object to the Magistrate Judge's R&R for three reasons. First, they argue that the R&R "failed to confront [their] argument that they may challenge the 2024 Rule as an *object* of that Rule." (Doc. No. 41-1 at 1) (emphasis added). Second, they contend that "not only does the 2024 Rule threaten real harm, it has already imposed such harm on" them. (Id.). Third, Plaintiffs claim that their "injuries are not speculative or attenuated," but rather "are the predictable outcome

of the 2024 Rule's likely effect on the decisions of businesses." (Id.). The Court will address each of these objections below.

    A.    <u>Objection No. 1: Whether Plaintiffs Have Standing as "Objects" of the 2024 Rule</u>

Plaintiffs first object to the R&R because it failed to address whether they have standing as "objects" of the 2024 Rule. (Doc. No. 45-1 at 1–6). Before reviewing this issue *de novo*, the Court notes that the Magistrate Judge did, in fact, acknowledge Plaintiffs' argument about being the objects of the 2024 Rule. (Doc. No. 41 at 23 n.7). She just found it unnecessary to analyze the issue in detail because Plaintiffs "did not otherwise meet all of the injury, traceability, and redressability requirements of the standing doctrine." (<u>Id.</u>).

A plaintiff is the "object" of a challenged Governmental action if she is "within the group of individuals whose conduct the statute regulates." <u>Phillips v. DeWine</u>, 841 F.3d 405, 414–15 (6th Cir. 2016). If an agency's rule directly regulates the plaintiff's conduct, then the Supreme Court has said "there is ordinarily little question that the action or inaction has caused [her] injury" for purposes of standing. <u>Lujan</u>, 504 U.S. at 561–62. On the other hand, when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed." <u>Id.</u> at 562. "Whether someone is in fact an object of a regulation is a flexible inquiry rooted in common sense." <u>Contender Farms, LLP v. United States Dep't of Agric.</u>, 779 F.3d 258, 265 (5th Cir. 2015).

The Court has considered the parties' arguments and does not find that Plaintiffs are objects of the 2024 Rule. (<u>See</u> Doc. Nos. 45-1 at 1–6; 46 at 3–5). The 2024 Rule "provides guidance" to employers about how they should consider "six economic reality factors" in "determining whether workers are employees or independent contractors under the FLSA." <u>See</u> 89 Fed. Reg. 1638, at 1640. If anything, the 2024 Rule directly regulates *employers* because it speaks directly to how employers should conduct their business. Yet Plaintiffs argue that the 2024 Rule directly regulates

*their* conduct because it regulates their "business relationships in favor of finding an employer-employee relationship," and, in turn, "threatens their chosen profession as independent contractors." (See Doc. No. 45-1 at 3–4).

The Court is hesitant to conclude that an interpretive rule meant to assist employers to comply with the FLSA somehow directly regulates what professional business status Plaintiffs chose to do business. The 2024 Rule's text supports the Court's hesitation because it explicitly states "that workers properly classified as independent contractors prior to the [2021 Rule] will likely continue to be properly classified as independent contractors under" the 2024 Rule, and that this Rule will not "cause workers who have long been properly classified as independent contractors . . . to improperly lose their independent status." 89 Fed. Reg. at 1658–59. Thus, it is unlikely that the 2024 Rule will threaten Plaintiffs' chosen profession because they "will likely continue to be properly classified as independent contractors" after the effective date. Id.

In any event, even if the Court found that Plaintiffs were objects of the 2024 Rule, the Court disagrees that their "standing is self-evident and no other evidence outside of the administrative record is required." (Doc. No. 45-1 at 5 (citations and internal quotation marks omitted)). Plaintiffs apparently base this argument on the "ordinarily little question" language from Lujan, but being the object of a challenged action "does not," as Plaintiffs suggest, "establish an *independent* basis for standing." See Holston United Methodist Home for Children, Inc. v. Becerra, 2022 WL 17084226, at *7 n.1 (E.D. Tenn. Nov. 18, 2022). Indeed, it is well-settled that the "object" of a challenged governmental action must still "establish an injury in fact and show that that challenged action both causes the injury and would be redressed through a favorable judgment" to have standing. See Carman v. Yellen, 112 F.4th 386, 399–400 (6th Cir. 2024) (citations omitted). While "objects" of a regulation ordinarily will have an easier time satisfying

the three standing requirements, that does not mean "objects" are absolved from establishing the "irreducible constitutional minimum of standing" altogether. Lujan, 504 U.S. at 560.

Accordingly, Plaintiffs' first objection is overruled because the Court agrees with the Magistrate Judge that Plaintiffs would not have standing merely if they were the objects of the 2024 Rule.

B. Objection Nos. 2 & 3: Whether the 2024 Rule Already Imposed Actual and Traceable Harm on Plaintiffs

Plaintiffs next object to the Magistrate Judge's overall finding that they failed to show they suffered concrete and particularized injuries (Objection No. 2), or that their injuries are traceable as the "predictable effect" of the 2024 Rule (Objection No. 3). (See Doc. No. 45-1 at 6–12). The Court will analyze these objections together because they involve intertwining issues.

The "crux" of Plaintiffs' "legal challenge to the 2024 Rule is that the rule's open-ended and non-exhaustive balancing test increases the risk that companies will misclassify them as employees and will thus cease to work with them." (Id. at 3). Plaintiffs also allege that the 2024 Rule could lead companies to pass along "administrative and compliance costs and burdens" to them. (Id. at 6; see also Doc. No. 25-1 at 5–6). Plaintiffs contend these risks are more than just speculative or conjectural because companies "have *already* taken measures that harm Ms. Chesak," including limiting the number of hours she can work as a freelancer, requiring her to spend unpaid hours documenting the precise tasks she performs, and requiring her to sign an indemnification agreement in the event the company is found liable for misclassifying her as an independent contractor. (Doc. No. 45-1 at 6–7 (emphasis added)).

This case is at the summary judgment stage, and to survive summary judgment Plaintiffs must present more than a mere "scintilla of evidence" to support their claims of Article III standing. See Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003). The Court agrees with the

Magistrate Judge that Plaintiffs' general fears of nonexistent future harm are too speculative to find a "substantial risk" that the harm "will occur." See Susan B. Anthony List v. Dreihaus, 573 U.S. 149, 158 (2014) (internal quotation marks omitted). That is because there is no evidence in the record demonstrating that companies have actually or will actually cease to work with Plaintiffs, will shift compliance costs onto Plaintiffs, or that the 2024 Rule "will chill" their future business practices. (Doc. No. 41 at 17). Moreover, "[m]erely alleging that a regulation creates a chilling effect is not sufficient to give rise to standing." Colt & Joe Trucking, 2025 WL 56658, at *6 (citing Citizen Ctr. v. Gessler, 770 F.3d 900, 913 (10th Cir. 2014)). Therefore, Plaintiffs have not established a future harm that is sufficiently imminent for standing purposes.

Chesak's specific allegations are different because she asserts in the verified complaint that certain unnamed third-party companies already took actions against her that caused her past harm. (Doc. No. 1 ¶ 45). Although Chesak has not produced any evidence about who these companies are or why they imposed additional burdens on her, the Sixth Circuit has held that "a verified complaint . . . satisfies the burden of the nonmovant to respond to a motion for summary judgment, unlike mere allegations or denials in unverified pleadings." King v. Harwood, 852 F.3d 568, 577–78 (6th Cir. 2017) (citing Thaddeus-X v. Blatter, 175 F.3d 378, 385 (6th Cir. 1999)) (internal quotation marks omitted). Given that Chesak appears to speak from personal knowledge when she alleges that certain companies took harmful actions against her, the Court finds that Plaintiffs—through the verified complaint—likely have met their burden to show that *Chesak* suffered a past injury in fact. See Parsons v. U.S. Dep't of Justice, 801 F.3d 701, 710 (6th Cir. 2015) (citations omitted) (holding that "only one plaintiff needs to have standing in order for the suit to move forward").

The Court's inquiry does not end there, however, because an injury in fact is not enough to confer standing by itself. Plaintiffs must also meet the traceability requirement, meaning they must show that Chesak's alleged injuries "fairly can be traced to the challenged action of the defendant[.]" Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41 (1976). Generally, courts refuse to "endorse standing theories that rest on speculation about the decisions of independent actors, particularly speculation about future unlawful conduct." Dep't of Commerce v. N.Y., 588 U.S. 752, 768 (2019) (citations and internal quotation marks omitted). This general rule seems to apply here because, as the Magistrate Judge found, "it is the actions of these unnamed third-party companies, and not Defendants, that have directly harmed Plaintiff Chesak." (Doc. No. 41 at 22). The Court can only speculate about *why* these unnamed third-party companies limited the number of hours Chesak can work as a freelancer, required her to document her tasks, or required her to sign an indemnification agreement. Ultimately, however, the Court agrees with the Magistrate Judge that Plaintiffs have not met their burden of establishing that these third-party companies took harmful actions against Chesak *because of* 2024 Rule's six-factor test, as opposed to other reasons unrelated to the 2024 Rule. (Id. at 23).

Plaintiffs counter that Chesak's injuries are not speculative because they are the inevitable result (or "predictable effect") of the 2024 Rule's impact on the decisions of third-party businesses. (Doc. No. 45-1 at 10–12). The Supreme Court has held that a plaintiff's theory of injury is not unduly speculative, and therefore is sufficient to confer standing, if it "relies on the predictable effect of Government action on the decisions of third parties." Dep't of Commerce, 588 U.S. at 768. In other words, if Plaintiffs can show that third parties will likely react in predictable ways to 2024 Rule, then the Court may consider those reactions in determining traceability. Id.

For many of the same reasons set forth in the R&R, the Court finds that Plaintiffs have not offered sufficient evidence to show that the actions taken against Chesak were the predictable result of the 2024 Rule's effect on how business will classify their workers. The Court agrees with the DOL's argument that companies could respond to the 2024 Rule in myriad ways, and some companies may have altered Chesak's working arrangements simply "as part of changes to their business practices or in response to general concerns about misclassification." (Doc. No. 46 at 6). But either way, there is nothing in the record to show that third-party companies would lower their workers' hours, make them document their tasks, or sign indemnification agreements as a predictable response to comply with the 2024 Rule's interpretive guidance. Based on this record, "[t]he Court can only guess" how these companies could respond to the 2024 Rule, "which is not enough to establish standing." (Doc. No. 41 at 23).

Accordingly, the Court finds that Plaintiffs do not have Article III standing to challenge the 2024 Rule, and it will therefore dismiss this case without prejudice for lack of subject matter jurisdiction. See Thompson v. Equifax Info. Servs., LLC, 441 F. Supp. 3d 533, 547 n.7 (E.D. Mich. 2020) (citing Thompson v. Love's Travel Stops & Country Stores, Inc., 748 F. App'x 6, 11 (6th Cir. 2018)).

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiffs' Objections to the R&R (Doc. Nos. 45, 45-1) are **OVERRULED**, and the R&R (Doc. No. 41) is **APPROVED AND ADOPTED**.

2. Plaintiffs' Motion for Preliminary Injunction (Doc. No. 7) is **DENIED WITHOUT PREJUDICE**.

3. Plaintiffs' Motion for Summary Judgment (Doc. No. 25) is **DENIED WITHOUT PREJUDICE**.

4. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 11) is **GRANTED IN PART**, and this case is hereby **DISMISSED WITHOUT PREJUDICE** for lack standing.

This is a final order. The Clerk of the Court shall enter a final judgment in accordance with Federal Rule of Civil Procedure 58 and close this file.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE